IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01337-KMT

SYNERGY RESOURCES CORPORATION,

      Plaintiff/Counterclaim Defendant,

and

EDWARD HOLLOWAY and CRAIG D. RASMUSON,

      Counterclaim Defendants,

v.

BRILLER, INC.,

      Defendant/Counterclaimant,

and

R.W.L. ENTERPRISES, and ROBERT W. LOVELESS,

      Defendants.

## AMENDED VERIFIED COMPLAINT

COMES NOW, Plaintiff, SYNERGY RESOURCES CORPORATION ("Plaintiff" or "Synergy"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(1)(B), and hereby serves its Amended Verified Complaint against Defendants, BRILLER INC. ("Briller"), R.W.L. ENTERPRISES ("RWL"), and ROBERT W. LOVELESS ("Loveless") (collectively "Defendants"), and states:

### INTRODUCTION AND PARTIES

    1.    Synergy Resources Corporation is a Colorado corporation with a principal place of business at 20203 Highway 60, Platteville, Colorado 80651.

2.      Briller Inc. is a Nevada corporation with a principal office address of 2701 Patton Way, Bakersfield, California 93308, and a mailing address of P.O. Box 2312, Bakersfield, California 93303-2312.

3.      Robert W. Loveless, d/b/a R.W.L. Enterprises has a principal office address of 2701 Patton Way, Bakersfield, California 93308, and a mailing address of P.O. Box 2312, Bakersfield, California 93303-2312. On information and belief, and on the basis of such information and belief, Robert W. Loveless is an officer and the sole owner of Briller Inc.

4.      Defendants breached, forfeited or surrendered two oil and gas leases covering lands within Section 5, Township 5 North, Range 66 West, 6th P.M., Weld County, Colorado, (the "Lands").

5.      Synergy is lessor under current oil and gas leases covering the Lands.

6.      This case arises from a dispute as to Defendants' breach, forfeiture and surrender of its two oil and gas leases and Defendants' interference with Synergy's contracts and prospective business advantage. Synergy seeks a determination and declaration that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated and economic damages.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that the contracts at issue, two oil and gas leases, were executed in Weld County, Colorado and relate to real property situated in Weld County, Colorado.

## FACTUAL BACKGROUND

9.      On May 7, 1982 John R.P. Wheeler, David G. Clarkson, William C. Bensler, William R. Farr, Robert G. Tointon, and Patrick T. Roche doing business as Greeley Tech Center, a joint venture, as Lessor, executed an Oil and Gas Lease in favor of Thomas H. Morgan, as Lessee, covering the Lands (the "1982 Lease") (attached hereto as Exhibit A).

10.     The 1982 Lease contains a habendum clause providing a primary term of three years and "as long thereafter as oil or gas, or either of them, is produced from said land (or from lands with which said land is consolidated) or the premises are being developed or operated." *Id* ¶ 2.

11.     The 1982 Lease contains an addendum that provides the following Pugh clauses:

Notwithstanding the specific provisions of Paragraph 2 of the printed Lease, after December 31, 1989, this Lease will be held by production from the surface of the

earth to the sands from which either (1) oil or gas is actually being produced in commercial quantities and sold, or (2) shut-in royalty payments are being made under the terms of this Addendum. If this Lease is in force on December 31, 1989, Lessee agrees to immediately release all sands which are not producing under the terms of this paragraph which are below the deepest producing formation.

\* \* \*   \* \* \*   \* \* \*

Notwithstanding the specific provisions of Paragraph 2 of the printed lease, after December 31, 1989, this Lease will be held by production for the 40 acre tract upon which a producing well is located or such other spaced size actually designated by the Colorado Oil and Gas Conservation Commission for any well which either oil or gas is actually being both (1) produced in commercial quantities and (2) sold. If this Lease is enforced [sic] on December 31, 1989, Lessee agrees to immediately release all acreage not included within such 40 acre tract or spaced area under the terms of this paragraph, as the case may be.

*Id.* at Exhibit B thereto.

    12. The 1982 Lease contains a cessation of production clause that provides:

If, after expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for re-working or drilling a well within sixty (60) days from such cessation and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

*Id.* ¶ 13.

    13. On December 3, 1985, John R.P. Wheeler, David G. Clarkson, William C. Bensler, William R. Farr, Robert G. Tointon, and Sonja M. Roche, Personal Representative of the Estate of Patrick T. Roche, doing business as Greeley Tech Center, a joint venture, as Lessor, executed an Oil and Gas Lease in favor of Rival Drilling, Inc., as Lessee, covering the Lands (the "1985 Lease") (attached hereto as Exhibit B).

    14. The 1985 Lease contains a habendum clause providing a primary term of ten years and "as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided." *Id* ¶ 1.

    15. The 1985 Lease contains an addendum that provides the following Pugh clauses:

> Notwithstanding the specific provisions of Paragraph 2 of the printed Lease, after December 31, 1989, this Lease will be held by production from the surface of the earth to the sands from which either (1) oil or gas is actually being produced in commercial quantities and sold, or (2) shut-in royalty payments are being made under the terms of Exhibit "B". If this Lease is in force on December 31, 1989, Lessee agrees to immediately release all sands which are not producing under the terms of this paragraph which are below the deepest producing formation.
>
> \* \* \*   \* \* \*   \* \* \*
>
> Notwithstanding the specific provisions of Paragraph 2 of the printed lease, after December 31, 1989, this Lease will be held by production for the 40 acre tract upon which a producing well is located or such other spaced size actually designated by the Colorado Oil and Gas Conservation Commission for any well which either oil or gas is actually being both (1) produced in commercial quantities and (2) sold. If this Lease is enforced [sic] on December 31, 1989, Lessee agrees to immediately release all acreage not included within such 40 acre tract or spaced area under the terms of this paragraph, as the case may be.

*Id.* at Exhibit B thereto.

    16.    The 1985 Lease contains a cessation of production clause that provides:

> If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof should cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole.

*Id.* ¶ 1.

    17.    Both the 1982 Lease and the 1985 Lease contain limitations on their respective shut-in clauses such that the shut-in gas clause of each lease shall not extend the term of the lease for more than five years beyond the primary term of the lease. 1982 Lease at Exhibit B thereto; 1985 Lease at Exhibit B thereto.

    18.    The 1985 Lease was taken as a top lease to the 1982 Lease; the 1985 Lease specifically identifies that the leased property is subject to an existing oil and gas lease.

    19.    The Greeley Tech Center #41-5 Well (API No. 05-123-11455) was spud on November 1, 1983 and completed to the Codell Formation, which occurs in the Greeley Tech Center #41-5 Well at the depth interval of 7,227–7,247 feet.

20.   The spacing unit for the Greeley Tech Center #41-5 Well consists of the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

21.   By Affidavit of Production dated June 26, 1990, recorded June 28, 1990 at Rec. No. 2218384, William W. Kelly provided notice of production from the Greeley Tech Center #41-5 Well and the purported extension beyond its primary term of the 1982 Lease by production.

22.   No prior affidavit of production or extension of oil and gas lease was recorded and indexed against the Lands.

23.   C.R.S. § 38-42-106 provides:

The lessee of any oil, gas, or other mineral lease given on or after March 28, 1967, on land situated in this state or any owner of a partial interest in such lease shall, prior to the expiration of six months after the expiration of the primary or definite term set forth in the lease, record in the office of the county clerk and recorder of the county wherein such land is situate an affidavit if the affiant claims an extension of the term of the lease beyond the primary or definite term thereof. If no such affidavit is recorded, then six months after the expiration of the primary or definite term of such lease, the record thereof, if any, shall cease to be notice and shall have no more effect than an unrecorded instrument.

24.   No other oil and gas wells have been drilled on lands covered by, or pooled with, the 1982 Lease or the 1985 Lease.

25.   On December 31, 1989, by operation of the Pugh clauses contained within the 1982 Lease and 1985 Lease, both Leases terminated as to depths below the base of the deepest producing formation, i.e., the Codell Formation, which occurs in the Greeley Tech Center #41-5 Well at the depth interval of 7,227–7,247 feet, and for all acreage not within the spacing unit for the Greeley Tech Center #41-5 Well, i.e., the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

26.   By Partial Release of Oil and Gas Lease dated February 23, 1990 and recorded February 27, 1990 at Rec. No. 2206375, the 1982 Lease was released to all depths and formations below 7,850 feet.

27.   By Release of Oil and Gas Lease dated November 30, 1990 and recorded December 5, 1990 at Rec. No. 2235100, the 1985 Lease was released to all depths and formations below 7,850 feet.

28.   Via mesne conveyances, RWL acquired the working interest in the 1982 Lease and the 1985 Lease.

29. By Assignment of Oil and Gas Lease dated January 11, 1993, recorded January 14, 1993 at Rec. No. 2318276, RWL conveyed to Briller all right, title, and interest in the 1985 Lease.

30. By Assignment and Bill of Sale dated January 13, 1993, recorded January 18, 1993 at Rec. No. 2318558, RWL conveyed to Briller all right, title, and interest in the 1982 Lease and the 1985 Lease.

31. On August 1, 2000, the COGCC issued a Notice of Alleged Violation indicating that the Greeley Tech Center #41-5 Well had no production of oil or gas reported for the prior two years.

32. On February 7, 2001, the COGCC issued a Notice of Alleged Violation indicating that no response to the August 1, 2000 Notice of Alleged Violation had been received by the COGCC and that no production of oil or gas had been reported for a period greater than two years.

33. On May 20, 2008, the COGCC issued a Notice of Alleged Violation indicating that no production was reported from the Greeley Tech Center #41-5 Well from January 2006 through at least May 2008.

34. Upon information and belief, and on the basis of such information and belief, on numerous occasions, including but not limited to the time period of July 2013 through September 2013, Defendants have failed to maintain production from the Greeley Tech Center #41-5 Well.

35. In August 2014, the status of the Greeley Tech Center #41-5 Well was reported by Defendants as "shut in" on COGCC online records for the period of July 2013 through September 2013, and no production was indicated at all for the period of October 2013 through August 2014.

36. Upon information and belief, Defendants have failed to fulfill their royalty payment obligations under the 1982 Lease and 1985 Lease, including the payment of a minimum royalty, shut-in payment, and/or royalties from production.

37. The 1982 Lease and the 1985 Lease have terminated by their own terms because of cessation of production from the Greeley Tech Center #41-5 Well greater than 60 or 90 days, respectively.

38. Defendants have materially breached the 1982 Lease and 1985 Lease by failing to perform express and implied covenants and conditions, including but not limited to the failure to timely re-work the Greeley Tech Center #41-5 Well and failing to perform their royalty obligations.

39. Between August 2014 and April 2015, Synergy provided Defendants several written notices that the 1982 Lease and the 1985 Lease terminated under their terms for reasons

including the cessation of production from the Greeley Tech Center #41-5 Well greater than 60- or 90-days, respectively.

40. Beginning in August 2014 and at various times thereafter, Synergy requested Defendants provide production records documenting any production of oil and/or gas sufficient to hold the 1982 Lease and the 1985 Lease by production in commercial quantities; Defendants have not provided such documentation.

41. In September 2014, Synergy obtained leasehold interests in the Lands. As such, Synergy is Lessee under various Oil and Gas Leases, including but not limited to those Oil and Gas Leases detailed on Exhibit C, attached hereto (collectively the "Synergy Leases").

42. Synergy has the exclusive right to produce oil and gas from the mineral estates covered by the Synergy Leases.

43. No later than August 2014, Defendants knew that the 1982 Lease and the 1985 Lease had terminated under their own terms and that Defendants no longer had the right to produce oil or gas from the Lands.

44. Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants have produced oil and gas from lands covered by the Synergy Leases.

45. In accordance with Rule 318A.a(4)c of the Colorado Oil and Gas Conservation Commission ("COGCC"), Synergy designated various wellbore spacing units covering the Lands, and other lands. These spacing units were administratively approved without protest on August 19, 2014 and November 7, 2014.

46. Pursuant to its obligations under the oil and gas leases described on Exhibit C, and other oil and gas leases included within drilling and spacing units designated under COGCC Rules, Synergy has begun operations for the exploration and development of oil and gas from spacing units including the Lands. These operations include, but are not limited to, drilling operations associated with the SRC Wiedeman 22-5-4NBHZ Well (API No. 05-123-40063), the SRC Wiedeman A-5-3NBHZ Well (API No. 05-123-40064), the SRC Wiedeman 12-5-4CHZ Well (API No. 05-123-40065), the SRC Wiedeman 11-5-3NCHZ Well (API No. 05-123-40066), the SRC Wiedeman 22-5-4CHZ Well (API No. 05-123-40067), the SRC Wiedeman 12-5-4NCHZ Well (API No. 05-123-40068), the SRC Wiedeman 21-5-3NBHZ Well (API No. 05-123-40069), and the SRC Wiedeman 21-5-3CHZ Well (API No. 05-123-40560) (collectively the "Synergy Wells").

47. Pursuant to the DJ Basin Horizontal Offset Policy dated June 20, 2013, revised December 17, 2013 (the "Horizontal Offset Policy"), Synergy and the COGCC are required to consider the effects of vertical and directional wells located within 1,500 feet of a horizontal wellbore.

48. The Synergy Wells are horizontal wells, one or more of which whose wellbores traverse within 1,500 feet of the Greeley Tech Center #41-5 Well.

49. Accordingly, the COGCC has identified the Greeley Tech Center #41-5 Well as an "Existing Well" within a remediation area distance from the Synergy Wells.

50. Pursuant to the Horizontal Offset Policy, and in order for Synergy to complete the Synergy Wells, the COGCC has required that Defendants either plug the Greeley Tech Center #41-5 Well or provide remedial cement needed to adequately isolate all hydrocarbon and freshwater formations. Additionally, the COGCC has required that Defendants ensure that the surface equipment associated with the Greeley Tech Center #41-5 Well includes a wellhead and master valve rated at 5,000 psi or adequate downhole mechanical isolation, which would include a permanent or temporary bridge plug to isolate the Codell Formation.

51. Pursuant to the COGCC requirements detailed in Paragraph 50, above, Synergy has requested that Defendants install on the Greeley Tech Center #41-5 Well a 5,000 psi wellhead, 5,000 psi master valve, and a bridge plug in order to seal off any former production zones from the potential migration effects of the hydraulic fracturing of the Synergy Wells.

52. Defendants have refused to undertake any of the mitigation measures required by the COGCC pursuant to the Horizontal Offset Policy, and requested by Synergy.

53. The Horizontal Offset Policy, provides that "When an Existing Well and the proposed horizontal well are under different operatorship, the Existing Well operator <u>may not</u> refuse to have their well appropriately mitigated to meet the requirements of this policy as set forth above" (emphasis added).

54. Accordingly, Defendants refusal to mitigate the Greeley Tech Center #41-5 Well is in violation of the Horizontal Offset Policy.

55. As a result of Defendants' actions, Synergy has not been able to complete and obtain production of oil and gas from the Synergy Wells. Defendants' conduct has and will continue to interfere with Synergy's contracts with third parties for the production of oil and gas from the Lands and has and will continue to interfere with Synergy's prospective business advantage associated with the same. Defendants' conduct has damaged Synergy.

56. Further, Defendants have interfered with Synergy's operations by objecting to any production from the Lands by Synergy by and through the Synergy Wells. This interference includes improper objections to Synergy's applications before the COGCC. Defendants' conduct has and will continue to interfere with Synergy's contracts with third parties for the production of oil and gas from the Lands and has and will continue to interfere with Synergy's prospective business advantage associated with the same. Defendants' conduct has damaged Synergy.

57. The COGCC does not have jurisdiction or authority to adjudicate lease validity or trespass claims.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

58. Paragraphs 1–57 are incorporated herein by reference.

59. There is a justiciable controversy between the Parties as to the status, validity, force, and effect of the 1982 Lease and the 1985 Lease.

60. As described in Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(b), Synergy is an interested party with rights arising under the oil and gas leases detailed on Exhibit C, attached hereto.

61. Defendants have materially breached express or implied covenants and conditions of the 1982 Lease and the 1985 Lease, including but not limited to failing to produce oil and gas, failing to timely re-work the Greeley Tech Center #41-5 Well, and failing to perform their royalty obligations.

62. Pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(a), Synergy is entitled to a declaratory judgment in its favor and against Defendants holding that (1) the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated and (2) the records of the 1982 Lease and 1985 Lease shall not be notice to the public of the existence of the 1982 Lease and 1985 Lease or of any interest therein or rights thereunder, and the records of the 1982 Lease and 1985 Lease shall not be received in evidence in any Colorado court on behalf of Briller, RWL or Loveless, or their successors or assigns, against Synergy, its successors or assigns.

63. In the alternative, Pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(a), Synergy is entitled to a declaratory judgment in its favor and against Defendants holding that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated as to all depths below the base of the Codell Formation, which is found in the Greeley Tech Center #41-5 Well at a depth of 7,247 feet, and all lands outside of the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Contract)

64. Paragraphs 1–57 are incorporated herein by reference.

65. Synergy has various contracts with mineral owners covering the Lands, *i.e.*, oil and gas leases, as detailed on Exhibit C, attached hereto.

66. Defendants knew or reasonably should have known of such contracts.

67. Defendants, through their words and conduct, intentionally placed Synergy in a position of being unable to perform under the contracts, thus interfering with the performance of the contracts.

68. Defendants' interference was and is improper.

69. Such interference by Defendants has caused damages to Synergy which are continuing, in an amount to be proven at trial.

70. Synergy is entitled to a recovery of all direct, consequential, special, and compensatory damages, including but not limited to lost or deferred revenue from production of oil and gas from the Lands and the costs of spacing and re-spacing the Lands in an attempt to accommodate Defendants.

## THIRD CLAIM FOR RELIEF
(Trespass)

71. Paragraphs 1–57 are incorporated herein by reference.

72. The 1982 Lease and 1985 Lease have terminated by their own terms. Accordingly, upon termination of the 1982 Lease and 1985 Lease, Defendants no longer had any right to produce oil and gas from the Lands.

73. Synergy has various contracts with mineral owners covering the Lands, *i.e.*, oil and gas leases, as detailed on Exhibit C, attached hereto, granting them the exclusive right to produce oil and gas from the leased mineral estates.

74. Defendants have not plugged the Greeley Tech Center #41-5 Well, pursuant to COGCC regulations.

75. Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well after the 1982 Lease and 1985 Lease terminated, and after Synergy obtained the Synergy Leases.

76. The Greeley Tech Center #41-5 Well is a continuing trespass against Synergy's leasehold estate.

77. If Defendants continue to produce oil and/or gas from the Greeley Tech Center #41-5 Well, Synergy seeks a determination that it is entitled to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases.

78. Synergy is entitled to an award to compensate Synergy for damages and losses described above in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (Bad Faith Trespass)

79. Paragraphs 1–57 are incorporated herein by reference.

80. Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that Synergy owned the leasehold estate under the Synergy Leases.

81. Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that they no longer held leasehold interests in the Lands.

82. Despite this knowledge, Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well.

83. Defendants' trespass was deliberate, willful, wanton, and done in bad faith. Defendants' trespass was purposefully committed without regard to Synergy's leasehold estate.

84. If Defendants continue to produce oil and/or gas from the Greeley Tech Center #41-5 Well, Synergy seeks a determination that it is entitled to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases without a reduction for costs of drilling and completion.

85. Synergy seeks an award against Defendants for all damages and losses described above, in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (Conversion)

86. Paragraphs 1–57 are incorporated herein by reference.

87. Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that Synergy owned the leasehold estate under the Synergy Leases.

88. Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that they no longer held leasehold interests in the Lands.

89. Despite this knowledge, Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well.

90.     Synergy has the exclusive right to produce oil and gas from the leased mineral estates under the Synergy Leases. Accordingly, all oil and gas produced by Defendants that is attributable to the Synergy Leases is the property of Synergy.

91.     Synergy seeks an award against Defendants for all damages and losses described above, in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Synergy Resources Corporation respectfully requests the following:

a.      That this Court enter a determination and declaration that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated;

b.      That this Court enter a determination and declaration that the records of the 1982 Lease and 1985 Lease shall not be notice to the public of the existence of the 1982 Lease and 1985 Lease or of any interest therein or rights thereunder, and the records of the 1982 Lease and 1985 Lease shall not be received in evidence in any Colorado court on behalf of Briller Inc., R.W.L. Enterprises, or Robert W. Loveless, or their successors or assigns, against Synergy Resources Corporation, or its successors or assigns;

c.      That this Court award Synergy damages for Defendants' intentional interference with contract, including but not limited to lost or deferred revenue and increased operating and administrative costs associated with the spacing of the Synergy Wells and proceedings before the COGCC, in an amount to be proven at trial;

d.      That this Court award Synergy damages for Defendants' continuing trespass against Synergy's leasehold estate under the Synergy Leases, including but not limited to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper;

e.      That this Court award Synergy damages for Defendants' continuing bad faith trespass against Synergy's leasehold estate under the Synergy Leases, including but not limited to 100% of the proceeds attributable to the mineral estate without a reduction for costs of drilling and completion covered by the Synergy Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper;

f.      That this Court award Synergy damages for Defendants' conversion of hydrocarbons, including but not limited to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper; and

   g.  That this Court award Synergy its costs, expert witness fees, attorney fees and interest as permitted by law, and such other and further relief as this Court deems just and proper.

  Respectfully submitted this 14th day of July, 2015.

               DUFFORD & BROWN, P.C.

               *s/ Ronald W. Opsahl*
               Fritz W. Ganz, Reg. No. 31912
               Ronald W. Opsahl, Reg. No. 35662
               Randall J. Feuerstein, Reg. No. 10479
               Attorneys for Plaintiff

## VERIFICATION

The undersigned declares:

1. I am the Chief Operating Officer of Plaintiff, Synergy Resources Corporation, in the above-entitled matter.

2. I have read the foregoing Amended Verified Complaint and know the contents thereof.

3. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

4. I declare and certify under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of July, 2015.

_____
Craig D. Rasmuson
Chief Operating Officer,
Synergy Resources Corporation

STATE OF COLORADO )
                  )
COUNTY OF WELD    )

SUBSCRIBED AND SWORN to before me this 13th day of July, 2015, by Craig D. Rasmuson, Chief Operating Officer, Synergy Resources Corporation.

Witness my hand and official seal.

_____
Notary Public

KEHAULANI MERRIE PUNILEI
Notary Public
State of Colorado

My Commission Expires: 3/15/16

## CERTIFICATE OF SERVICE

  I hereby certify that on this 14th day of July 2015, I served a true and accurate copy of the foregoing on the following via CM/ECF:

Scott M. Campbell, Esq.
Aaron G. Norris, Esq.
POULSON, ODELL & PETERSON, LLC
1775 Sherman Street, Suite 1400
Denver, Colorado 80203
(303) 861-4400
(303) 861-1225 (facsimile)
scampbell@popllc.com
anorris@popllc.com

                /s/ Ronald W. Opsahl
                Ronald W. Opsahl, Esq.