IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01337-KMT

SYNERGY RESOURCES CORPORATION, a Colorado corporation,

     Plaintiff,

v.

BRILLER, INC., a Nevada corporation, R.W.L. ENTERPRISES, and ROBERT W. LOVELESS,

     Defendants/Counterclaimants,

v.

EDWARD HOLLOWAY, an individual, and CRAIG D. RASMUSON, an individual,

     Additional Counterclaim Defendants.

---

## ANSWER TO AMENDED VERIFIED COMPLAINT, AND AMENDED COUNTERCLAIMS, AND JURY DEMAND

---

**COME NOW** Defendants, Briller, Inc., a Nevada corporation, R.W.L. Enterprises, and Robert W. Loveless ("Defendants" or "Briller"), by and through their counsel of record, and file their Answer to Amended Complaint, Counterclaims, and Jury Demand against ("Plaintiff" or "Synergy") and additional counterclaim defendants, Edward Holloway and Craig D. Rasmuson, in support of which  Defendants answer and allege as follows:

1.      Synergy Resources Corporation is a Colorado corporation with a principal place of business at 20203 Highway 60, Platteville, Colorado 80651.

**Answer:**      Defendants admit the allegations of Paragraph No. 1 of Plaintiff's Amended Complaint.

2.      Briller Inc. is a Nevada corporation with a principal office address of 2701 Patton Way, Bakersfield, California 93308, and a mailing address of P.O. Box 2312, Bakersfield, California 93303-2312.

**Answer:**      Defendants admit the allegations of Paragraph No. 2 of Plaintiff's Amended Complaint.

3.      Robert W. Loveless, d/b/a R.W.L. Enterprises has a principal office address of 2701 Patton Way, Bakersfield, California 93308, and a mailing address of P.O. Box 2312, Bakersfield, California 93303-2312. On information and belief, and on the basis of such information and belief, Robert W. Loveless is an officer and the sole owner of Briller Inc.

**Answer:**      Defendants admit the allegations of Paragraph No. 3 of Plaintiff's Amended Complaint.

4.      Defendants breached, forfeited or surrendered two oil and gas leases covering lands within Section 5, Township 5 North, Range 66 West, 6th P.M., Weld County, Colorado, (the "Lands").

**Answer:**     Defendants deny the allegations of Paragraph No. 4 of the Plaintiff's Amended Complaint.

5.     Synergy is lessor under current oil and gas leases covering the Lands.

**Answer:**     Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph No. 5 of Plaintiff's Amended Complaint and therefore deny the same.

6.     This case arises from a dispute as to Defendants' breach, forfeiture and surrender of its two oil and gas leases and Defendants' interference with Synergy's contracts and prospective business advantage. Synergy seeks a determination and declaration that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated and economic damages.

**Answer:**     Defendants admit that Synergy seeks a determination and declaration that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated and economic damages.  Defendants deny the remaining allegations in Paragraph No. 6 of Plaintiff's Amended Complaint.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

**Answer:**     Defendants admit the allegations of Paragraph No. 7 of the Plaintiff's Amended Complaint, subject to their affirmative defenses and Defendants' Objection that Plaintiff is Not the Real Party in Interest to Determine Lease Validity, Motion to Dismiss Amended Complaint for Failure to Join

Necessary Parties, Motion to Realign Necessary Parties as Plaintiffs, and Motion to Dismiss Amended Complaint for Failure to State a Claim Upon which Relief can be Granted, filed contemporaneously herewith.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that the contracts at issue, two oil and gas leases, were executed in Weld County, Colorado and relate to real property situated in Weld County, Colorado.

**Answer:**      Defendants admit the allegations of Paragraph No. 8 of the Plaintiff's Amended Complaint

## FACTUAL BACKGROUND

9.      On May 7, 1982 John R.P. Wheeler, David G. Clarkson, William C. Bensler, William R. Farr, Robert G. Tointon, and Patrick T. Roche doing business as Greeley Tech Center, a joint venture, as Lessor, executed an Oil and Gas Lease in favor of Thomas H. Morgan, as Lessee, covering the Lands (the "1982 Lease") (attached hereto as Exhibit A).

**Answer:**      Defendants admit the allegations of Paragraph No. 9 of the Plaintiff's Amended Complaint.

10.      The 1982 Lease contains a habendum clause providing a primary term of three years and "as long thereafter as oil or gas, or either of them, is produced from said land (or from lands with which said land is consolidated) or the premises are being developed or operated." *Id*. ¶ 2.

**Answer:**    The allegations in Paragraph No. 10 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 10 of the Plaintiff's Amended Complaint.

11.    The 1982 Lease contains an addendum that provides the following Pugh clauses:

> Notwithstanding the specific provisions of Paragraph 2 of the printed Lease, after December 31, 1989, this Lease will be held by production from the surface of the earth to the sands from which either (1) oil or gas is actually being produced in commercial quantities and sold, or (2) shut-in royalty payments are being made under the terms of this Addendum. If this Lease is in force on December 31, 1989, Lessee agrees to immediately release all sands which are not producing under the terms of this paragraph which are below the deepest producing formation.
>
> * * *   * * *   * * *
>
> Notwithstanding the specific provisions of Paragraph 2 of the printed lease, after December 31, 1989, this Lease will be held by production for the 40 acre tract upon which a producing well is located or such other spaced size actually designated by the Colorado Oil and Gas Conservation Commission for any well which either oil or gas is actually being both (1) produced in commercial quantities and (2) sold. If this Lease is enforced [sic] on December 31, 1989, Lessee agrees to immediately release all acreage not included within such 40 acre tract or spaced area under the terms of this paragraph, as the case may be.

*Id*. at Exhibit B thereto.

**Answer:**    The allegations in Paragraph No. 11 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and

are therefore denied.  The referenced document also speaks for itself.  To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 11 of the Plaintiff's Amended Complaint.

12.     The 1982 Lease contains a cessation of production clause that provides:

> If, after expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for re-working or drilling a well within sixty (60) days from such cessation and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

*Id.* ¶ 13.

**Answer:**     The allegations in Paragraph No. 12 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.  The referenced document also speaks for itself.  To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 12 of the Plaintiff's Amended Complaint.

13.     On December 3, 1985, John R.P. Wheeler, David G. Clarkson, William C. Bensler, William R. Farr, Robert G. Tointon, and Sonja M. Roche, Personal Representative of the Estate of Patrick T. Roche, doing business as Greeley Tech Center, a joint venture, as Lessor, executed an Oil and Gas Lease in favor of Rival Drilling, Inc., as Lessee, covering the Lands (the "1985 Lease") (attached hereto as Exhibit B).

**Answer:**     Defendants admit the allegations of Paragraph No. 13 of the Plaintiff's Amended Complaint.

14.     The 1985 Lease contains a habendum clause providing a primary term of ten years and "as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided." *Id.* ¶ 1.

**Answer:**     The allegations in Paragraph No. 14 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.  The referenced document also speaks for itself.  To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 14 of the Plaintiff's Amended Complaint.

15.     The 1985 Lease contains an addendum that provides the following Pugh clauses:

> Notwithstanding the specific provisions of Paragraph 2 of the printed Lease, after December 31, 1989, this Lease will be held by production from the surface of the earth to the sands from which either (1) oil or gas is actually being produced in commercial quantities and sold, or (2) shut-in royalty payments are being made under the terms of Exhibit "B". If this Lease is in force on December 31, 1989, Lessee agrees to immediately release all sands which are not producing under the terms of this paragraph which are below the deepest producing formation.
>
> * * *   * * *   * * *
>
> Notwithstanding the specific provisions of Paragraph 2 of the printed lease, after December 31, 1989, this Lease will be held by production for the 40 acre tract upon which a producing well is located or such other spaced size actually designated by the Colorado Oil and Gas Conservation Commission for any well which either oil or gas is actually being both (1) produced in commercial quantities and (2) sold. If this Lease is enforced [sic] on December 31, 1989, Lessee agrees to immediately release all acreage not

included within such 40 acre tract or spaced area under the terms of this paragraph, as the case may be.

*Id*. at Exhibit B thereto.

> **Answer:**     The allegations in Paragraph No. 15 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 15 of the Plaintiff's Amended Complaint.

16.     The 1985 Lease contains a cessation of production clause that provides:

If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof should cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole.

*Id.* ¶ 1.

> **Answer:**     The allegations in Paragraph No. 16 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 16 of the Plaintiff's Amended Complaint.

17.     Both the 1982 Lease and the 1985 Lease contain limitations on their respective shut-in clauses such that the shut-in gas clause of each lease shall not extend

the term of the lease for more than five years beyond the primary term of the lease. 1982 Lease at Exhibit B thereto; 1985 Lease at Exhibit B thereto.

> **Answer:**    The allegations in Paragraph No. 17 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 17 of the Plaintiff's Amended Complaint.

18.    The 1985 Lease was taken as a top lease to the 1982 Lease; the 1985 Lease specifically identifies that the leased property is subject to an existing oil and gas lease.

> **Answer:**    The allegations in Paragraph No. 18 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 18 of the Plaintiff's Amended Complaint.

19.    The Greeley Tech Center #41-5 Well (API No. 05-123-11455) was spud on November 1, 1983 and completed to the Codell Formation, which occurs in the Greeley Tech Center #41-5 Well at the depth interval of 7,227-7,247 feet.

> **Answer:**    Defendants admit the Greeley Tech Center #41-5 Well (API No. 05-123-11455) was spud on or about October 27, 1983.   Defendants also admit the Greeley Tech Center #41-5 Well (API No. 05-123-11455) was completed on or

about January 25, 1984 in the Codell Formation. Defendants further admit the Codell formation occurs in the Greeley Tech Center #41-5 Well at the depth interval of 7,227 – 7,247 feet. Defendants deny all further allegations of Paragraph No. 19 of the Plaintiff's Amended Complaint.

20.     The spacing unit for the Greeley Tech Center #41-5 Well consists of the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

**Answer:**     Defendants admit that the spacing unit for the Greeley Tech Center #41-5 Well is 80-acres, more or less, according to the governmental survey, identified as the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

21.     By Affidavit of Production dated June 26, 1990, recorded June 28, 1990 at Rec. No. 2218384, William W. Kelly provided notice of production from the Greeley Tech Center #41-5 Well and the purported extension beyond its primary term of the 1982 Lease by production.

**Answer:**     Defendants admit that by Affidavit of Production dated June 26, 1990, recorded June 28, 1990 at Rec. No. 2218384, William W. Kelly provided notice of production from the Greeley Tech Center #41-5 Well and memorialized the extension beyond its primary term of the 1982 Lease by production, which also worked to memorialize the extension of the 1985 Lease by production.

Defendants deny all further allegations of Paragraph No. 21 of the Plaintiff's Amended Complaint.

22.     No prior affidavit of production or extension of oil and gas lease was recorded and indexed against the Lands.

**Answer:**     Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph No. 22 of Plaintiff's Amended Complaint and therefore deny the same.

23.     C.R.S. § 38-42-106 provides:

The lessee of any oil, gas, or other mineral lease given on or after March 28, 1967, on land situated in this state or any owner of a partial interest in such lease shall, prior to the expiration of six months after the expiration of the primary or definite term set forth in the lease, record in the office of the county clerk and recorder of the county wherein such land is situate an affidavit if the affiant claims an extension of the term of the lease beyond the primary or definite term thereof. If no such affidavit is recorded, then six months after the expiration of the primary or definite term of such lease, the record thereof, if any, shall cease to be notice and shall have no more effect than an unrecorded instrument.

**Answer:**     Defendants admit the allegations of Paragraph 23 of the Plaintiff's Amended Complaint insofar as said allegation recites the substance of the referenced statute.  Defendants deny all remaining allegations of Paragraph No. 23 of the Plaintiff's Amended Complaint.

24.     No other oil and gas wells have been drilled on lands covered by, or pooled with, the 1982 Lease or the 1985 Lease.

**Answer:** Defendants deny Paragraph No. 24 of Plaintiff's Amended Complaint.

25. On December 31, 1989, by operation of the Pugh clauses contained within the 1982 Lease and 1985 Lease, both Leases terminated as to depths below the base of the deepest producing formation, *i.e.*, the Codell Formation, which occurs in the Greeley Tech Center #41-5 Well at the depth interval of 7,227 – 7,247 feet, and for all acreage not within the spacing unit for the Greeley Tech Center #41-5 Well, *i.e.*, the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

**Answer:** The allegations in Paragraph No. 25 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied. To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 25 of the Plaintiff's Amended Complaint.

26. By Partial Release of Oil and Gas Lease dated February 23, 1990 and recorded February 27, 1990 at Rec. No. 2206375, the 1982 Lease was released to all depths and formations below 7,850 feet.

**Answer:** The allegations in Paragraph No. 26 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied. The referenced document also speaks for itself. To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 26 of the Plaintiff's Amended Complaint.

27.     By Release of Oil and Gas Lease dated November 30, 1990 and recorded December 5, 1990 at Rec. No. 2235100, the 1985 Lease was released to all depths and formations below 7,850 feet.

**Answer:**     The allegations in Paragraph No. 27 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 27 of the Plaintiff's Amended Complaint.

28.     Via *mesne* conveyances, RWL acquired the working interest in the 1982 Lease and the 1985 Lease.

**Answer:**     Defendants admit Paragraph No. 28 of Plaintiff's Amended Complaint.

29.     By Assignment of Oil and Gas Lease dated January 11, 1993, recorded January 14, 1993 at Rec. No. 2318276, RWL conveyed to Briller all right, title, and interest in the 1985 Lease.

**Answer:**     Defendants admit Paragraph No. 29 of Plaintiff's Amended Complaint.

30.     By Assignment and Bill of Sale dated January 13, 1993, recorded January 18, 1993 at Rec. No. 2318558, RWL conveyed to Briller all right, title, and interest in the 1982 Lease and the 1985 Lease.

**Answer:**      Defendants admit that by Assignment and Bill of Sale dated January 13, 1993, recorded January 18, 1993 at Rec. No. 2318558, RWL conveyed to Briller all right, title, and interest in the 1982 Lease.   Defendant denies the remaining allegations of Paragraph No. 30 of the Plaintiff's Amended Complaint.

31.      On August 1, 2000, the COGCC issued a Notice of Alleged Violation indicating that the Greeley Tech Center #41-5 Well had no production of oil or gas reported for the prior two years.

**Answer:**      Defendants admit that the COGCC issued a Notice of Alleged Violation on August 1, 2000.   The referenced document also speaks for itself. Defendants deny the remaining allegations of Paragraph No. 31 of Plaintiff's Amended Complaint.

32.      On February 7, 2001, the COGCC issued a Notice of Alleged Violation indicating that no response to the August 1, 2000 Notice of Alleged Violation had been received by the COGCC and that no production of oil or gas had been reported for a period greater than two years.

**Answer:**      Defendants admit that the COGCC issued a Notice of Alleged Violation on February 7, 2001.   The referenced document also speaks for itself. Defendants deny the remaining allegations of Paragraph No. 32 of Plaintiff's Amended Complaint.

33.    On May 20, 2008, the COGCC issued a Notice of Alleged Violation indicating that no production was reported from the Greeley Tech Center #41-5 Well from January 2006 through at least May 2008.

**Answer:**    Defendants admit that the COGCC issued a Notice of Alleged Violation on May 20, 2008.  The referenced document also speaks for itself. Defendants deny the remaining allegations of Paragraph No. 33 of Plaintiff's Amended Complaint.

34.    Upon information and belief, and on the basis of such information and belief, on numerous occasions, including but not limited to the time period of July 2013 through September 2013, Defendants have failed to maintain production from the Greeley Tech Center #41-5 Well.

**Answer:**    Defendants deny the allegations in Paragraph No. 34 of the Plaintiff's Amended Complaint.

35.    In August 2014, the status of the Greeley Tech Center #41-5 Well was reported by Defendants as "shut in" on COGCC online records for the period of July 2013 through September 2013, and no production was indicated at all for the period of October 2013 through August 2014.

**Answer:**    Defendants deny the allegations in Paragraph No. 35 of the Plaintiff's Amended Complaint.

36.     Upon information and belief, Defendants have failed to fulfill their royalty payment obligations under the 1982 Lease and 1985 Lease, including the payment of a minimum royalty, shut-in payment, and/or royalties from production.

**Answer:**     Defendants deny the allegations in Paragraph No. 36 of the Plaintiff's Amended Complaint.

37.     The 1982 Lease and the 1985 Lease have terminated by their own terms because of cessation of production from the Greeley Tech Center #41-5 Well greater than 60 or 90 days, respectively.

**Answer:**     Defendants deny the allegations in Paragraph No. 37 of the Plaintiff's Amended Complaint.

38.     Defendants have materially breached the 1982 Lease and 1985 Lease by failing to perform express and implied covenants and conditions, including but not limited to the failure to timely re-work the Greeley Tech Center #41-5 Well and failing to perform their royalty obligations.

**Answer:**     Defendants deny the allegations in Paragraph No. 38 of the Plaintiff's Amended Complaint.

39.     Between August 2014 and April 2015, Synergy provided Defendants several written notices that the 1982 Lease and the 1985 Lease terminated under their terms for reasons including the cessation of production from the Greeley Tech Center #41-5 Well greater than 60- or 90-days, respectively.

**Answer:**     Defendants deny the allegations in Paragraph No. 39 of the Plaintiff's Amended Complaint.

40.     Beginning in August 2014 and at various times thereafter, Synergy requested Defendants provide production records documenting any production of oil and/or gas sufficient to hold the 1982 Lease and the 1985 Lease by production in commercial quantities; Defendants have not provided such documentation.

**Answer:**     Defendants admit that Synergy, on December 26, 2014, for the first time, and only after creating multiple wellbore spacing units without notice to Defendants, and only after drilling all of the trespassing horizontal wells, requested Defendants to provide it with production records documenting any production of oil and/or gas sufficient to hold the 1982 Lease.  Defendant denies the remaining allegations of Paragraph No. 40 of Plaintiff's Amended Complaint.

41.     In September 2014, Synergy obtained leasehold interests in the Lands. As such, Synergy is Lessee under various Oil and Gas Leases, including but not limited to those Oil and Gas Leases detailed on Exhibit C, attached hereto (collectively the "Synergy Leases").

**Answer:**     Defendants deny the allegations in Paragraph No. 41 of Plaintiff's Amended Complaint.

42.     Synergy has the exclusive right to produce oil and gas from the mineral estates covered by the Synergy Leases.

**Answer:**    Defendants deny the allegations in Paragraph No. 42 of the Plaintiff's Amended Complaint.

43.    No later than August 2014, Defendants knew that the 1982 Lease and the 1985 Lease had terminated under their own terms and that Defendants no longer had the right to produce oil or gas from the Lands.

**Answer:**    Defendants deny the allegations in Paragraph No. 43 of the Plaintiff's Amended Complaint.

44.    Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants have produced oil and gas from lands covered by the Synergy Leases.

**Answer:**    Defendants deny the allegations in Paragraph No. 44 of the Plaintiff's Amended Complaint.

45.    In accordance with Rule 318A.a(4)c of the Colorado Oil and Gas Conservation Commission ("COGCC"), Synergy designated various wellbore spacing units covering the Lands, and other lands.  These spacing units were administratively approved without protest on August 19, 2014 and November 7, 2014.

**Answer:**    The allegations in Paragraph No. 45 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.  To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 45 of Plaintiff's Amended Complaint.

46.     Pursuant to its obligations under the oil and gas leases described on Exhibit C, and other oil and gas leases included within drilling and spacing units designated under COGCC Rules, Synergy has begun operations for the exploration and development of oil and gas from spacing units including the Lands. These operations include, but are not limited to, drilling operations associated with the SRC Wiedeman 22-5-4NBHZ Well (API No. 05-123-40063), the SRC Wiedeman A-5-3NBHZ Well (API No. 05-123-40064), the SRC Wiedeman 12-5-4CHZ Well (API No. 05-123-40065), the SRC Wiedeman ll-5-3NCHZ Well (API No. 05-123-40066), the SRC Wiedeman 22-5-4CHZ Well (API No. 05-123-40067), the SRC Wiedeman 12-5-4NCHZ Well (API No. 05-123-40068), the SRC Wiedeman 21-5-3NBHZ Well (API No. 05-123-40069), and the SRC Wiedeman 21-5-3CHZ Well (API No. 05-123-40560) (collectively the "Synergy Wells").

**Answer:**     Defendants admit that Plaintiff has in bad faith drilled the identified wells into and through Defendant, Briller Inc.'s, exclusively owned leasehold interest without seeking the consent of Defendants, or any mineral owners, before drilling the identified wells.   Defendants deny the remaining allegations of Paragraph No. 46 of Plaintiff's Amended Complaint.

47.     Pursuant to the DJ Basin Horizontal Offset Policy dated June 20, 2013, revised December 17, 2013 (the "Horizontal Offset Policy"), Synergy and the COGCC are required to consider the effects of vertical and directional wells located within 1,500 feet of a horizontal well bore.

**Answer:**     The allegations in Paragraph No. 47 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.  To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 47 of Plaintiff's Amended Complaint.

48.     The Synergy Wells are horizontal wells, one or more of which whose well bores traverse within 1,500 feet of the Greeley Tech Center #41-5 Well.

**Answer:**     Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph No. 48 of Plaintiff's Amended Complaint and therefore deny the same.

49.     Accordingly, the COGCC has identified the Greeley Tech Center #41-5 Well as an "Existing Well" within a remediation area distance from the Synergy Wells.

**Answer:**     Defendants deny the allegations of Paragraph No. 49 of Plaintiff's Amended Complaint.

50.     Pursuant to the Horizontal Offset Policy, and in order for Synergy to complete the Synergy Wells, the COGCC has required that Defendants either plug the Greeley Tech Center #41-5 Well or provide remedial cement needed to adequately isolate all hydrocarbon and freshwater formations. Additionally, the COGCC has required that Defendants ensure that the surface equipment associated with the Greeley Tech Center #41-5 Well includes a wellhead and master valve rated at 5,000 psi or adequate downhole

mechanical isolation, which would include a permanent or temporary bridge plug to isolate the Codell Formation.

**Answer:**    Defendants deny the allegations of Paragraph No. 50 of Plaintiff's Amended Complaint.

51.    Pursuant to the COGCC requirements detailed in Paragraph 50, above, Synergy has requested that Defendants install on the Greeley Tech Center #41-5 Well a 5,000 psi wellhead, 5,000 psi master valve, and a bridge plug in order to seal off any former production zones from the potential migration effects of the hydraulic fracturing of the Synergy Wells.

**Answer:**    Defendants deny the allegations of Paragraph No. 51 of Plaintiff's Amended Complaint.

52.    Defendants have refused to undertake any of the mitigation measures required by the COGCC pursuant to the Horizontal Offset Policy, and requested by Synergy.

**Answer:**    Defendants deny the allegations of Paragraph No. 52 of Plaintiff's Amended Complaint.

53.    The Horizontal Offset Policy, provides that "When an Existing Well and the proposed horizontal well are under different operatorship, the Existing Well operator may not refuse to have their well appropriately mitigated to meet the requirements of this policy as set forth above" (emphasis added).

**Answer:**      The allegations in Paragraph No. 53 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 53 of Plaintiff's Amended Complaint.

54.     Accordingly, Defendants refusal to mitigate the Greeley Tech Center #41-5 Well is in violation of the Horizontal Offset Policy.

**Answer:**      The allegations in Paragraph No. 54 of Plaintiff's Amended Complaint constitute impermissible or invalid statements of legal conclusions and are therefore denied.   The referenced document also speaks for itself.   To the extent a response is nonetheless required, Defendants deny the allegations of Paragraph No. 54 of Plaintiff's Amended Complaint.

55.     As a result of Defendants' actions, Synergy has not been able to complete and obtain production of oil and gas from the Synergy Wells.   Defendants' conduct has and will continue to interfere with Synergy's contracts with third parties for the production of oil and gas from the Lands and has and will continue to interfere with Synergy's prospective business advantage associated with the same.   Defendants' conduct has damaged Synergy.

**Answer:**      Defendants deny the allegations of Paragraph 55 of the Plaintiff's Amended Complaint.

56.    Further, Defendants have interfered with Synergy's operations by objecting to any production from the Lands by Synergy by and through the Synergy Wells. This interference includes improper objections to Synergy's applications before the COGCC. Defendants' conduct has and will continue to interfere with Synergy's contracts with third parties for the production of oil and gas from the Lands and has and will continue to interfere with Synergy's prospective business advantage associated with the same. Defendants' conduct has damaged Synergy.

**Answer:**    Defendants deny the allegations of Paragraph No. 56 of Plaintiff's Amended Complaint.

57.    The COGCC does not have jurisdiction or authority to adjudicate lease validity or trespass claims.

**Answer:**    Defendants admit the allegations of Paragraph No. 57 of Plaintiff's Amended Complaint.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

58.    Paragraphs 1-57 are incorporated herein by reference.

**Answer:**    Defendants reallege and incorporate herein by reference each and every answer, admission and denial in their responses to Paragraphs 1 through 57 of Plaintiff's Amended Complaint as though fully set forth herein.

59.    There is a justiciable controversy between the Parties as to the status, validity, force, and effect of the 1982 Lease and the 1985 Lease.

**Answer:**      Defendants deny the allegations of Paragraph No. 59 of Plaintiff's

Amended Complaint.

60.      As described in Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(b),

Synergy is an interested party with rights arising under the oil and gas leases detailed on

Exhibit C, attached hereto.

**Answer:**      Defendants deny the allegations of Paragraph No. 60 of Plaintiff's

Amended Complaint.

61.      Defendants have materially breached express or implied covenants and

conditions of the 1982 Lease and the 1985 Lease, including but not limited to failing to

produce oil and gas, failing to timely re-work the Greeley Tech Center #41-5 Well, and

failing to perform their royalty obligations.

**Answer:**      Defendants deny the allegations of Paragraph No. 61 of Plaintiff's

Amended Complaint.

62.      Pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(a),

Synergy is entitled to a declaratory judgment in its favor and against Defendants holding

that (1) the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and

terminated and (2) the records of the 1982 Lease and 1985 Lease shall not be notice to

the public of the existence of the 1982 Lease and 1985 Lease or of any interest therein or

rights thereunder, and the records of the 1982 Lease and 1985 Lease shall not be received

in evidence in any Colorado court on behalf of Briller, RWL or Loveless, or their successors or assigns, against Synergy, its successors or assigns.

**Answer:**      Defendants deny the allegations of Paragraph No. 62 of Plaintiff's Amended Complaint.

63.      In the alternative, Pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and C.R.C.P. 57(a), Synergy is entitled to a declaratory judgment in its favor and against Defendants holding that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated as to all depths below the base of the Codell Formation, which is found in the Greeley Tech Center #41-5 Well at a depth of 7,247 feet, and all lands outside of the E/2NE/4 of Section 5, Township 5 North, Range 66 West, 6th P.M.

**Answer:**      Defendants deny the allegations of Paragraph No. 63 of Plaintiff's Amended Complaint.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Contract)

64.      Paragraphs 1-63 are incorporated herein by reference.

**Answer:**      Defendants reallege and incorporate herein by reference each and every answer, admission and denial in their responses to Paragraphs 1 through 63 of Plaintiff's Amended Complaint as though fully set forth herein.

65.      Synergy has various contracts with mineral owners covering the Lands, i.e., oil and gas leases, as detailed on Exhibit C, attached hereto.

**Answer:**     Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph No. 65 of Plaintiff's Amended Complaint, and therefore deny the same.

66.     Defendants knew or reasonably should have known of such contracts.

**Answer:**     Defendants deny the allegations of Paragraph No. 66 of Plaintiff's Amended Complaint.

67.     Defendants, through their words and conduct, intentionally placed Synergy in a position of being unable to perform under the contracts, thus interfering with the performance of the contracts.

**Answer:**     Defendants deny the allegations of Paragraph No. 67 of Plaintiff's Amended Complaint.

68.     Defendants' interference was and is improper.

**Answer:**     Defendants deny the allegations of Paragraph No. 68 of Plaintiff's Amended Complaint.

69.     Such interference by Defendants has caused damages to Synergy which are continuing, in an amount to be proven at trial.

**Answer:**     Defendants deny the allegations of Paragraph No. 69 of Plaintiff's Amended Complaint.

70.     Synergy is entitled to a recovery of all direct, consequential, special, and compensatory damages, including but not limited to lost or deferred revenue from

production of oil and gas from the Lands and the costs of spacing and re-spacing the Lands in an attempt to accommodate Defendants.

**Answer:**     Defendants deny the allegations of Paragraph No. 70 of Plaintiff's Amended Complaint.

**THIRD CLAIM FOR RELIEF**
**(Trespass)**

71.     Paragraphs 1-70 are incorporated herein by reference.

**Answer:**     Defendants reallege and incorporate herein by reference each and every answer, admission and denial in their responses to Paragraphs 1 through 70 of Plaintiff's Amended Complaint as though fully set forth herein.

72.     The 1982 Lease and 1985 Lease have terminated by their own terms. Accordingly, upon termination of the 1982 Lease and 1985 Lease, Defendants no longer had any right to produce oil and gas from the Lands.

**Answer:**     Defendants deny the allegations of Paragraph No. 72 of Plaintiff's Amended Complaint.

73.     Synergy has various contracts with mineral owners covering the lands, *i.e.*, oil and gas leases, as detailed on Exhibit C, attached hereto, granting them the exclusive right to produce oil and gas from the leased mineral estates.

**Answer:**     Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph No. 73 of Plaintiff's Amended Complaint and therefore deny the same.

74.     Defendants have not plugged the Greeley Tech Center #41-5 Well, pursuant to COGCC regulations.

**Answer:**     Defendants admit they have not plugged the Greeley Tech Center #41-5 Well.  Defendants deny the remaining allegations contained in Paragraph No. 74 of Plaintiff's Amended Complaint.

75.     Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well after the 1982 Lease and 1985 Lease terminated, and after Synergy obtained the Synergy Leases.

**Answer:**     Defendants admit that they have produced oil and gas from the Greeley Tech Center #41-5 Well.  Defendants deny the remaining allegations contained in Paragraph No. 75 of Plaintiff's Amended Complaint.

76.     The Greeley Tech Center #41-5 Well is a continuing trespass against Synergy's leasehold estate.

**Answer:**     Defendants deny the allegations of Paragraph No. 76 of Plaintiff's Amended Complaint.

77.     If Defendants continue to produce oil and/or gas from the Greeley Tech Center #41-5 Well, Synergy seeks a determination that it is entitled to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases.

**Answer:**     Defendants deny the allegations of Paragraph No. 77 of Plaintiff's Amended Complaint.

78.     Synergy is entitled to an award to compensate Synergy for damages and losses described above in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

**Answer:**     Defendants deny the allegations of Paragraph No. 78 of Plaintiff's Amended Complaint.

**FOURTH CLAIM FOR RELIEF**
**(Bad Faith Trespass)**

79.     Paragraphs 1-78 are incorporated herein by reference.

**Answer:**     Defendants reallege and incorporate herein by reference each and every answer, admission and denial in their responses to Paragraphs 1 through 78 of Plaintiff's Amended Complaint as though fully set forth herein.

80.     Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that Synergy owned the leasehold estate under the Synergy Leases.

**Answer:**     Defendants deny the allegations of Paragraph No. 80 of Plaintiff's Amended Complaint.

81.     Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that they no longer held leasehold interests in the Lands.

**Answer:**     Defendants deny the allegations of Paragraph No. 81 of Plaintiff's Amended Complaint.

82.     Despite this knowledge, Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well.

**Answer:**     Defendants admit that they have produced oil and gas from the Greeley Tech Center #41-5 Well.   Defendants deny the remaining allegations contained in Paragraph No. 82 of Plaintiff's Amended Complaint.

83.     Defendants' trespass was deliberate, willful, wanton, and done in bad faith. Defendants' trespass was purposefully committed without regard to Synergy's leasehold estate.

**Answer:**     Defendants deny the allegations of Paragraph No. 83 of Plaintiff's Amended Complaint.

84.     If Defendants continue to produce oil and/or gas from the Greeley Tech Center #41-5 Well, Synergy seeks a determination that it is entitled to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases without a reduction for costs of drilling and completion.

**Answer:**     Defendants deny the allegations of Paragraph No. 84 of Plaintiff's Amended Complaint.

85.     Synergy seeks an award against Defendants for all damages and losses described above, in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

**Answer:**    Defendants deny that Plaintiff is entitled to the relief sought in Paragraph No. 85 of Plaintiff's Amended Complaint.

## FIFTH CLAIM FOR RELIEF
### (Conversion)

86.    Paragraphs 1-85 are incorporated herein by reference.

**Answer:**    Defendants reallege and incorporate herein by reference each and every answer, admission and denial in their responses to Paragraphs 1 through 85 of Plaintiff's Amended Complaint as though fully set forth herein.

87.    Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that Synergy owned the leasehold estate under the Synergy Leases.

**Answer:**    Defendants deny the allegations of Paragraph No. 87 of Plaintiff's Amended Complaint.

88.    Subsequent to the termination of the 1982 Lease and the 1985 Lease, and after the execution of the Synergy Leases, Defendants had actual knowledge that they no longer held leasehold interests in the Lands.

**Answer:**    Defendants deny the allegations of Paragraph No. 88 of Plaintiff's Amended Complaint.

89.    Despite this knowledge, Defendants intentionally produced oil and gas from the Greeley Tech Center #41-5 Well.

**Answer:**      Defendants admit that they have produced oil and gas from the Greeley Tech Center #41-5 Well.  Defendants deny the remaining allegations contained in Paragraph No. 89 of Plaintiff's Amended Complaint.

90.    Synergy has the exclusive right to produce oil and gas from the leased mineral estates under the Synergy Leases.  Accordingly, all oil and gas produced by Defendants that is attributable to the Synergy Leases is the property of Synergy.

**Answer:**      Defendants deny the allegations of Paragraph No. 90 of Plaintiff's Amended Complaint.

91.    Synergy seeks an award against Defendants for all damages and losses described above, in an amount to be proven at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper.

**Answer:**      Defendants deny that Plaintiff is entitled to the relief sought in Paragraph No. 91 of Plaintiff's Amended Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Synergy Resources Corporation respectfully requests the following:

a.    That this Court enter a determination and declaration that the 1982 Lease and 1985 Lease are forfeited, surrendered, cancelled, and terminated;

b.    That this Court enter a determination and declaration that the records of the 1982 Lease and 1985 Lease shall not be notice to the public of the existence of the 1982 Lease and 1985 Lease or of any interest therein or rights thereunder, and the

records of the 1982 Lease and 1985 Lease shall not be received in evidence in any Colorado court on behalf of Briller Inc., R.W.L. Enterprises, or Robert W. Loveless, or their successors or assigns, against Synergy Resources Corporation, or its successors or assigns;

c.      That this Court award Synergy damages for Defendants' intentional interference with contract, including but not limited to lost or deferred revenue and increased operating and administrative costs associated with the spacing of the Synergy Wells and proceedings before the COGCC, in an amount to be proven at trial.

d.      That this Court award Synergy damages for Defendants' continuing trespass against Synergy's leasehold estate under the Synergy Leases, including but not limited to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper;

e.      That this Court award Synergy damages for Defendants' continuing bad faith trespass against Synergy's leasehold estate under the Synergy Leases, including but not limited to 100% of the proceeds attributable to the mineral estate without a reduction for costs of drilling and completion covered by the Synergy

Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper;

f.       That this Court award Synergy damages for Defendants' conversion of hydrocarbons, including but not limited to 100% of the proceeds attributable to the mineral estate covered by the Synergy Leases in an amount to be made certain upon proof at trial, and for such other and further relief, at law or in equity, as this Court deems just and proper; and

g.       That this Court award Synergy its costs, expert witness fees, attorney fees and interest as permitted by law, and such other and further relief as this Court deems just and proper.

**Answer:**       The unnumbered Paragraphs commencing with "WHEREFORE" of Plaintiff's Amended Complaint contain no allegations and no response is therefore required.  To the extent a response is required, Defendants deny those allegations.

WHEREFORE, Defendants respectfully request an order, judgment, and decree against the Plaintiff on Plaintiff's Amended Complaint and that said Amended Complaint be denied and dismissed with prejudice, and such other and further relief in law or equity to which Defendants are entitled.

## AFFIRMATIVE DEFENSES

1.       Defendants deny each and every allegation contained in Plaintiff's Amended Complaint which is not expressly admitted by Defendants.

2.     Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

3.     Plaintiff's claims are barred in whole or in part by the doctrines of unclean hands, estoppel, acquiescence, laches, ratification, and waiver.  The current lessor of the 1982 Lease or the 1985 Lease has been accepting royalty payments, without objection, for 30 years.

4.     Equity abhors a forfeiture.  The current lessor of the 1982 Lease or the 1985 Lease has been accepting royalty payments, without objection, for 30 years.

5.     Plaintiff's claims are barred by its assumption of risk.  Plaintiff has been trying to buy Briller's interests in the lease(s) for years, and then, without any title in the Subject Lands, Plaintiff unilaterally and without notice or discussion with Briller, or any of the ostensibly unleased mineral owners, deemed the leases as void.  Plaintiff then filed applications with the Colorado Oil and Gas Conservation Commission to create wellbore spacing units without providing notice of such applications to Defendants as required under Commission rules, then proceeded to drill the trespassing wells.  Plaintiff should have attempted to resolve the title issues, provided requisite notices, and obtained all requisite consents before filing its applications with the Commission and before drilling its trespassing wells.

6.     Plaintiff's claims should be dismissed for failure to join necessary or indispensable parties needed for a just adjudication of their claims.  Plaintiff's Amended

Verified Complaint, Exhibit C, lists 44 alleged mineral owners that it top leased only after Plaintiff applied for wellbore spacing units without notice to Defendants, and after it drilled all of the subject trespassing wells.  Moreover, there are other alleged mineral owners who have not leased their alleged interests to Plaintiff.  See Defendants' Objection that Plaintiff is Not the Real Party in Interest to Determine Lease Validity, Motion to Dismiss Amended Complaint for Failure to Join Necessary Parties, Motion to Realign Necessary Parties as Plaintiffs, and Motion to Dismiss Amended Complaint for Failure to State a Claim Upon which Relief can be Granted, filed contemporaneously herewith.

7.      Plaintiff is not the real party in interest under C.R.C.P. 17 or F.R.C.P. 17 to pursue termination of the 1982 Lease or the 1985 Lease.  Plaintiff's Amended Verified Complaint, Exhibit C, lists 44 alleged mineral owners that it top leased only after Plaintiff applied for wellbore spacing units without notice to Defendants, and after it drilled all of the subject trespassing wells.  Moreover, there are other alleged mineral owners who have not leased their alleged interests to Plaintiff.   See Defendants' Objection that Plaintiff is Not the Real Party in Interest to Determine Lease Validity, Motion to Dismiss Amended Complaint for Failure to Join Necessary Parties, Motion to Realign Necessary Parties as Plaintiffs, and Motion to Dismiss Amended Complaint for Failure to State a Claim Upon which Relief can be Granted, filed contemporaneously herewith.

8.     Plaintiff has failed to mitigate its damages, if any.

9.     Plaintiff's damages, if any, are speculative.

10.    Plaintiff's actions, inactions, omissions or other wrongs or breaches were the sole proximate cause or cause of Plaintiff's alleged damages.

11.    Plaintiff has not alleged generally or specifically that all conditions precedent have been performed or have occurred, as required by C.R.C.P. 9(c) and F.R.C.P. 9(c).  The 1985 Lease specifically requires lessor(s) to provide notice to lessee of any alleged breach or failure to satisfy conditions and an opportunity to cure. (Complaint, Ex. "B", 1985 GTC Lease, Ex. "B", Pt. IV).   Neither the lessor/mineral owners nor Plaintiff have provided the required notice and opportunity to cure. Moreover, the 1982 Lease and the 1985 Lease required the lessor/mineral owners to provide notice of any conveyances of the mineral estate before any grantees or assignees of the original Lessor have standing to challenge the validity of the 1982 Lease and the 1985 Lease.  (Amended Complaint, Ex. "A", 1982 GTC Lease, ¶ 9; Ex. "B", 1985 Lease, ¶ 13).  None of the lessor/mineral owners have complied with the notice of assignment provisions as required by the 1982 Lease and the 1985 Lease.  Plaintiff has also generally failed to attempt to place Defendant(s) in default by making demand before seeking cancellation or forfeiture.

12.    Plaintiff's claims are barred by applicable statutes of limitations, including, but not limited to C.R.S. § 38-41-101.  Defendants have been in possession of said

Property for the 18 year statutory period as demonstrated by at least 29 years of actual production from the Greeley Tech Center #41-5 Well, and the possession of said Property was exclusive, continuous, actual, open, notorious possession of the Property for a period greater than eighteen (18) years.  Plaintiff's claims are all also derivative of the 1982 and/or 1985 Lease.  Accordingly, those claims are barred by applicable statutes of limitations, including, but not limited to C.R.S. §§ 13-80-101(a).

13.     The 1985 Lease was issued as a new oil and gas lease, not a top lease.

14.     Even if the 1985 Lease was issued as a top lease, Defendants have perpetuated the 1985 Lease.

15.     Defendants' obligations under the 1982 Lease and/or the 1985 Lease were suspended at the moment Plaintiff, and/or any other mineral owners at any given time, claimed the leases were terminated or subject to cancellation, until the issue is resolved by the court.

16.     To the extent Plaintiff's claims are based on alleged violations of the Colorado Oil and Gas Conservation Act, Plaintiff is precluded from relying upon those allegations because the Colorado Oil and Gas Conservation Commission has not taken any enforcement action against the Defendants or issued any orders applicable to the Defendants.  Moreover, Plaintiff has failed to exhaust its administrative remedies on those issues.

17.     To the extent Plaintiff's claims are premised upon the interpretation and enforceability of the DJ Basin Horizontal Offset Policy dated June 20, 2013, revised December 17, 2013 (the "Horizontal Offset Policy"), Plaintiff has misrepresented the terms of the Horizontal Offset Policy, and the Horizontal Offset Policy is unenforceable.

18.     To the extent the Plaintiff's claims are premised upon notices of alleged violation issued by the Colorado Oil and Gas Conservation Commission ("NOAVs"), the Commission withdrew all of those NOAVs.

19.     To the extent Plaintiff's claims are premised upon interference with its purported rights and ability to comply with third party contracts, prospective business advantages, or ability to operate and produce the subject wells, Plaintiff is solely responsible for that interference because, even assuming without conceding that the 1982 and 1985 Leases terminated, Plaintiff did not provide notice to alleged unleased mineral owners of its applications for wellbore spacing units, leading to the Colorado Oil and Gas Conservation Commission suspending Plaintiff's operations.

20.     Plaintiff's Amended Verified Complaint misrepresents when Synergy obtained its alleged leases.  Upon information and belief, of the 44 oil and gas leases listed on Plaintiff's Exhibit C, all of which Plaintiff alleges were obtained in September, 2014, two were executed on September 30, 2014, and the other 42 oil and gas leases were executed later, and more specifically, only after Synergy applied for wellbore spacing units without notice to Defendants, and after it drilled all of the subject trespassing wells.

21.     Plaintiff's claims are barred, in whole or part, because Defendants have acted reasonably and in good faith without an intent to wrongfully deprive Plaintiff or any party of oil, gas, minerals or other property or funds.

22.     Plaintiff's claims are barred by force majeure under the common law, the force majeure clause of the 1985 Lease, and the force majeure provisions of the November, 1985 Joint Operating Agreement, including, but not limited to, all incidents of flooding, frozen lines, high line pressures, separator problems, and/or federal and state requirements to shut-in the well in order to protect the public health, safety, welfare, and the environment for the identified reasons and/or any other reasons.

23.     Defendants hereby incorporate their counterclaims as an affirmative defense to Plaintiffs' claims.

24.     Plaintiff's claims are groundless, vexatious, frivolous and without a reasonable justification or basis in fact or law and the Court should award Defendants their attorney fees, costs and other relief as authorized by law.

25.     Defendants specifically reserve the right to assert additional defenses and objections, following discovery of same.

### AMENDED COUNTERCLAIMS, AND JURY DEMAND

COMES NOW Defendant, Briller, Inc., and for its amended counterclaim against Plaintiff, and claims against Edward Holloway, and Craig D. Rasmuson, states and alleges as follows:

## PARTIES

1.      Defendant/Counterclaimant, Briller, Inc., ("Briller"), is a Nevada corporation with its principal place of business at 2701 Patton Way, Bakersfield, California 93308.

2.      Counterclaim Defendant, Synergy Resources Corporation, ("Synergy"), is a Colorado corporation with its principal place of business at 20203 Highway 60, Platteville, Colorado 80651.

3.      Additional Counterclaim Defendant, Edward Holloway, ("Holloway"), is an individual whose address is 3892 Tayside Ct., Timnath, Colorado 80547.

4.      Additional Counterclaim Defendant, Craig D. Rasmuson, ("Rasmuson"), is an individual whose address is 301 Habitat Bay, Windsor, Colorado 80550.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over Briller's claims, which arise under the laws of the State of Colorado, pursuant to federal diversity jurisdiction and supplemental jurisdiction.  28 U.S.C. §§ 1332, 1367(a), 1441, and 1446.

6.      This dispute involves oil and gas interests located exclusively in the State of Colorado.  Venue in this Court is therefore appropriate.  28 U.S.C. § 1391(2).

7.      This Court has personal jurisdiction over Synergy, Holloway, and Rasmuson pursuant to C.R.S. § 13-1-124 (2015) and F.R.C.P. 4.

## GENERAL ALLEGATIONS

8.      John R.P. Wheeler, David G. Clarkson, William C. Bensler, William R. Farr, Robert G. Tointon and Sonja M. Roche, Personal Representative of the Estate of Patrick T. Roche, doing business as Greeley Tech Center, a joint venture, as Lessor, and Rival Drilling, Inc., as Lessee, were parties to that certain Oil and Gas Lease dated December 3, 1985, recorded on February 18, 1986, in Book 1103 at page 0792, Reception No. 02043218, of the records of the Weld County Clerk and Recorder's Office covering portions of the Northeast Quarter of <u>Section 5, Township 5 North, Range 66 West, 6th PM</u>, Weld County, Colorado, as more particularly described on Exhibit "A" to the oil and gas lease, (hereinafter the "GTC Lease").

9.      Plaintiff, Briller, is the current lessee of the GTC Lease from the surface of the earth to the deeper of 7850'; the base of the Codell Formation; or the base of the sands from which oil or gas is being produced from the GTC Well located on the GTC Lease, Weld County, Colorado, as more particularly described on Exhibit "A" to the GTC Lease, (hereinafter the "Subject Lands").  RWL Enterprises, is the operator of the GTC Well and GTC Lease on behalf of Briller.

10.      Upon information and belief, at all relevant times herein mentioned, Synergy, Holloway, and Rasmuson did not have oil and gas leases or any other contractual agreements with any mineral owner or owners within the Subject Lands.

11.     Upon information and belief, at all relevant times herein mentioned, Holloway and Rasmuson, were and still are owners, officers, directors and/or employees of both Petroleum Management, LLC and Synergy.

12.     Beginning in early to mid-2008 Holloway, then/and still with Petroleum Management, LLC, periodically contacted Briller's principal and president, Robert W. Loveless to discuss potential oil and gas operations which would involve the GTC Lease.

13.     Upon information and belief, Holloway, became an officer and director of Synergy on or about September 2008.

14.     Upon information and belief, Holloway, is the current President, Co-Chief Executive Officer, and Director of Synergy.

15.     Upon information and belief, Rasmuson, was hired by Synergy on or about September 2008.

16.     Upon information and belief, Rasmuson, is the current Chief Operating Officer for Synergy.

17.     On or about September 30, 2008, Rasmuson, as Manager of Land and Field Operations for Petroleum Management, LLC, provided written notice to RWL Enterprises of its intent to create a 160 acre drilling and spacing unit including the Subject Lands.

18.     On or about October 9, 2008, Rasmuson, as Manager of Land and Field Operations for Petroleum Management LLC, provided written notice to RWL Enterprises of its intent to create a 160 acre drilling and spacing unit including the Subject Lands.

19.     RWL Enterprises timely objected to both proposals by sending written objections to Petroleum Management, LLC and the Colorado Oil and Gas Conservation Commission.

20.     Rasmuson, as Manager of Land and Field Operations for Petroleum Management, LLC, subsequently withdrew both proposals.

21.     From September 2008 through 2010, Holloway and Rasmuson, on behalf of Synergy, continued to periodically contact Briller to discuss potential oil and gas operations which would involve the GTC Lease.

22.     In or about January 5, 2009, Petroleum Management LLC, filed an Application for Permit to Drill the deviated SRC #31-5D Well, with a surface location in Township 6 North, Range 66 West, 6th PM:  Section 32: SW¼SE¼, and a bottomhole location in Township 5 North, Range 66 West, 6th PM:  Section 5: W½NE¼.

23.     The Application for Permit to Drill lists Ed Holloway as the Contact Name.

24.     In or about May 12, 2009, Synergy acquired the ownership and operatorship of the proposed deviated SRC #31-5D Well.

25.     In or about November 12, 2009, Synergy spud the deviated SRC #31-5D Well.

26.     In or about November 16, 2009, Synergy completed the deviated SRC #31-5D Well in the Subject Lands.  The date of first production from the SRC #31-5D Well commenced in or about January 13, 2010.

27.     In or about March 2010, Synergy, by and through Holloway and Rasmuson, contacted Briller to discuss the possibility of drilling deviated wells into the Subject Lands.

28.     Synergy, by and through Holloway and Rasmuson, did not inform Briller that the deviated SRC #31-5D Well had been drilled and completed in, or that it was producing from, the Subject Lands.

29.     In or about April 2010, Synergy, by and through Holloway and Rasmuson, again contacted Briller to discuss the possibility of drilling deviated wells into the Subject Lands.

30.     Synergy, by and through Holloway and Rasmuson, did not inform Briller that the deviated SRC #31-5D Well had been drilled and completed in, or that it was producing from, the Subject Lands.

31.     In or about November 2010, Synergy, by and through Holloway and Rasmuson, again contacted Briller to discuss the possibility of drilling deviated wells into the Subject Lands.

32.     Synergy, by and through Holloway and Rasmuson, did not inform Briller that the deviated SRC #31-5D Well had been drilled and completed in, or that it was producing from, the Subject Lands.

33.     Synergy, by and through Holloway and/or Rasmuson, continued to periodically contact Briller over the next couple of years about acquiring the GTC Well and the GTC Lease, or the possibility of drilling deviated wells into the Subject Lands.

34.     Synergy, by and through Holloway and Rasmuson, never informed Briller that the deviated SRC #31-5D Well had been drilled and completed in, or that it was producing from, the Subject Lands.

35.     Upon information and belief, and unknown to Briller at the time, sometime in or prior to February, 2013, Synergy, and Holloway and Rasmuson, began preparing for a multi-million dollar horizontal multi-well drilling program that would involve drilling into, and producing from, the Subject Lands.

36.     In or about October 2013, Holloway inquired whether Briller wished to participate in new horizontal wells planned by Synergy or to sell its interest.  This contact, for the first time, also made reference to Synergy's plans for the drilling of horizontal wells.

37.     Neither Synergy, nor Holloway, nor Rasmuson ever communicated to Briller their plans for implementing a multi-million dollar horizontal multi-well drilling

program or a multi-million dollar horizontal well drilling program that would involve drilling into, and producing from, the Subject Lands.

38.     Upon information and belief, without Briller's knowledge or consent, Synergy, and Holloway and/or Rasmuson sent a letter agreement dated April 21, 2014 to the City of Greeley.  That letter stated in pertinent part:

> "As a condition of the City's acknowledgement and approval below, within 90 days of the date . . . of the City's . . . approval, Synergy . . . will initiate and seek revision of the approved Northridge Oil/Gas Use by Special Review permit so as to reduce the approved wells by eight. In addition, **Synergy** . . . **will cause the RWL oil/gas well** and associated equipment located on the Boomerang Golf Course **to be Plugged and Abandoned** and all equipment associated with this site to be reclaimed to the original surface conditions prior to the drilling of the wells shown on the attached well plats."

("Greeley Letter Agreement" (emphasis added)).

39.     Upon information and belief, sometime on or before June 10, 2014, Synergy, and Holloway and/or Rasmuson began preparing to apply to the Colorado Oil and Gas Conservation Commission for four 640 acre horizontal wellbore spacing units for the drilling of one horizontal well in each 640 acre horizontal wellbore spacing unit,

encompassing the Subject Lands, for the drilling of horizontal wells into the Subject Lands, and for the purposes of producing hydrocarbons from the Subject Lands.

40.     The horizontal wells proposed for the four 640 acre horizontal wellbore spacing units were the 05-123-40069 SRC Wiedeman 21-5-3NBHZ Well, the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well, the 05-123-40064 SRC Wiedeman A-5-3NBHZ Well, and the 05-123-40066 SRC Wiedeman 11-5-3NCHZ Well.

41.     Upon information and belief, sometime on or before June 10, 2014, Synergy, and Holloway and/or Rasmuson also began preparing to apply to the Colorado Oil and Gas Conservation Commission for four 320 acre horizontal wellbore spacing units for the drilling of one horizontal well in each 320 acre horizontal wellbore spacing unit, encompassing the Subject Lands, for the drilling of horizontal wells into the Subject Lands, and for the purposes of producing hydrocarbons from the Subject Lands.

42.     The horizontal wells proposed for the four 320 acre horizontal wellbore spacing units were the 05-123-40063 SRC Wiedeman 22-5-4NBHZ Well, the 05-123-40065 SRC Wiedeman 12-5-4CHZ Well, the 05-123-40067 SRC Wiedeman 22-5-4CHZ Well, and the 05-123-40068 SRC Wiedeman 12-5-4NCHZ Well.

43.     The April 21, 2014 Greeley Letter Agreement was eventually executed by the Greeley City Manager on or about June 16, 2014.

44.     Neither Synergy, nor Holloway, nor Rasmuson ever informed Briller of the Greeley Letter Agreement nor did they ever request Briller's consent to cause the "RWL

oil/gas well and associated equipment located on the Boomerang Golf Course to be Plugged and Abandoned and all equipment associated with this site to be reclaimed to the original surface conditions prior to the drilling" of the contemplated horizontal wells as stated in the Greeley Letter Agreement.

45.     In or about July 2014, Rasmuson called Briller and indicated that Synergy was continuing to prepare documents for a proposed acquisition of Briller's interests. Rasmuson also wanted to discuss the potential drilling of horizontal wells.  Rasmuson also inquired whether Briller would execute a document for the state well permitting process.

46.     On or about July 10, 2014, Integrated Petroleum Technologies, Inc., ("IPT"), as agent for Synergy, and/or Holloway and/or Rasmuson, sent four letters to the Colorado Oil and Gas Conservation Commission requesting the Director of the Commission to create four 320 acre wellbore spacing units pursuant to COGCC Rule 318A.e., one each for each of the horizontal wells referenced in paragraph 39 above, into the Subject Lands, and for the purposes of producing hydrocarbons from the Subject Lands ("320 IPT Letter"), which stated in pertinent part:

> "Synergy is not the only owner within the proposed wellbore spacing unit and has provided notice to the remaining owner(s) within this spacing unit, as required by COGCC Rule 318A.e(6). Copies of the required notification letters are on file at Synergy's office. The required thirty (30) day notice

period has elapsed absent the receipt by Synergy of any objection to their proposal by the owner(s) within the proposed spacing unit for the subject well."

47.     On or about July 10, 2014, IPT, as agent for Synergy, and/or Holloway and/or Rasmuson, sent three letters to the Colorado Oil and Gas Conservation Commission requesting the Director of the Commission to create three 640 acre wellbore spacing unit pursuant to COGCC Rule 318A.e., for the drilling of the 05-123-40069 SRC Wiedeman 21-5-3NBHZ Well, the 05-123-40064 SRC Wiedeman A-5-3NBHZ Well, and the 05-123-40066 SRC Wiedeman 11-5-3NCHZ Well, into the Subject Lands, and for the purposes of producing hydrocarbons from the Subject Lands ("640 IPT Letter"), which stated in pertinent part:

"Synergy is not the only owner within the proposed wellbore spacing unit and has provided notice to the remaining owner(s) within this spacing unit, as required by COGCC Rule 318A.e(6). Copies of the required notification letters are on file at Synergy's office. The required thirty (30) day notice period has elapsed absent the receipt by Synergy of any objection to their proposal by the owner(s) within the proposed spacing unit for the subject well."

48.     The required notification letters referenced in the 320 IPT Letter and the 640 IPT Letter were not sent to Briller.

49.     Upon information and belief, the required notification letters referenced in the 320 IPT Letter and the 640 IPT Letter were not sent to the current lessor, mineral owner, or mineral owners of the Subject Lands.

50.     4 CCR 318A.e.(6)(A) provides:

"Notice shall be given by certified mail by the operator of a proposed boundary well, wellbore spacing unit, horizontal well or horizontal wellbore spacing unit to all owners in the proposed wellbore spacing unit. Notice shall be given by certified mail by the operator of a proposed additional producing formation to all owners in cornering and contiguous spacing units of the requested completion and the proposed spacing unit; if the additional producing formation is unspaced only the owner in the proposed spacing unit needs to be notified. Notice for a boundary well, wellbore spacing unit, horizontal well or horizontal wellbore spacing unit shall include a description of the wellbore orientation, the anticipated spud date, the size and shape of the proposed wellbore spacing unit (with depiction attached), the proposed surface and bottom hole locations, identified by footage descriptions, and the survey plat. For proposed horizontal wells and horizontal wellbore spacing units, the operator shall also identify by footage descriptions, the location at which the wellbore penetrates the target formation."

51.    The Colorado Oil and Gas Conservation Commission's "Greater Wattenberg Area (GWA) Wellbore Spacing Units Operator's Guidance (10/20/14)" further explains that:  "Submittal of a false certification is considered to be a serious matter by the COGCC and can result in enforcement action.  This system depends on the good faith (and therefore due diligence) of the applicant."  (Operator's Guidance, at 4).

52.    On or about July 15, 2014, Synergy filed with the Colorado Oil and Gas Conservation Commission three Applications for Permits to Drill the 05-123-40069 SRC Wiedeman 21-5-3NBHZ Well, the 05-123-40064 SRC Wiedeman A-5-3NBHZ Well, and the 05-123-40066 SRC Wiedeman 11-5-3NCHZ Well.

53.    In or about August 2014, Rasmuson called Briller and stated that he wished to discuss the 80 acres held by production from the GTC Well.   Rasmuson further stated that Synergy needed Briller to consent to the spacing unit for a planned horizontal well.

54.    Synergy never provided any such letter or other documents to Briller for consideration by Briller.

55.    On or about August 8, 2014, Synergy obtained a letter opinion from the law firm Dufford & Brown, purportedly advising Synergy that the GTC Lease had expired for lack of production in 2013, or earlier (the "Dufford & Brown opinion letter").

56.    Despite the Dufford & Brown opinion letter, on or about August 19, 2014, Synergy submitted seven "OFFSET WELL EVALUATION[s]" to the Colorado Oil and Gas Conservation Commission, one each for the APDs filed to date.   The OFFSET

WELL EVALUATIONs identify the GTC Well as a producing well and identify the operator of the GTC Well as "RWL Enterprises".

57.     On or about August 19, 2014, Synergy agreed with Colorado Oil and Gas Conservation Commission Conditions of Approval for the drilling of the anticipated horizontal wells:

"Operator acknowledges the proximity of the listed well: Operator agrees to: provide mitigation option 1 or 2 (per the DJ Basin Horizontal Offset Policy) to mitigate the situation, ensure all applicable documentation is submitted based on the selected mitigation option chosen, and submit a Form 42 ("OFFSET MITIGATION COMPLETED") for the remediated wells, referencing the API number of the proposed horizontal well(s) stating what appropriate mitigation occurred and that it has been completed, prior to the hydraulic stimulation of this well.

GREELEY TECH CENTER 41-5 (API NO 123-11455)"

58.     On or about August, 19, 2014, the Colorado Oil and Gas Conservation Commission approved the seven Applications for Permit to Drill filed to date by Defendant Synergy.

59.     On or about August 29, 2014, Synergy e-mailed the following message to Briller:

"I work for Synergy . . . Synergy will be drilling a horizontal pad of 8 wells located in the NWNE of Section 5 . . . One of these wells, the Wiedeman 21-5-3NHZ, will be located within 150' of the Greeley Tech Center 41-5 wellbore. As operator of the Greeley Tech Center 41-5, we need your signature to get the permit for the Wiedeman 21-5-3NHZ approved. I have attached the waiver in need of your signature and a plat of the planned well. Please let me know if you have any questions or concerns. . . ."

The attached waiver was a letter purportedly dated July 1, 2014 from IPT to RWL Enterprises.   The waiver provides in pertinent part:   "Per COGCC Rules Synergy is required to get the offset well operator's approval in writing and a waiver of said Rule 318A.m."

60.     Within minutes of the above referenced e-mail and waiver being sent, Synergy and Rasmuson sent another e-mail to RWL Enterprises stating:   "Wiley- Please disregard- I have not kept Brianne in the loop of our discussions."

61.     The waiver letter initially requested by Synergy was not signed by RWL Enterprises.

62.     Synergy instead relocated the Wiedeman 21-5-3NHZ Well wellbore from within 150 feet South of the GTC Well to 160 feet North of the GTC Well to avoid the need for a waiver from RWL Enterprises, and to further avoid having to disclose the facts alleged above, and re-named the well as the Wiedeman 21-5-3CHZ.

63.     Neither Synergy, nor Holloway, nor Rasmuson ever notified RWL Enterprises or Briller that they decided to relocate the Wiedeman 21-5-3NHZ (re-named 21-5-3CHZ) Well wellbore 160 feet North of the GTC Well.

64.     Relocating the Wiedeman 21-5-3NHZ Well (re-named 21-5-3CHZ) wellbore 160 feet North of the GTC Well resulted in a regulatory expansion of the 320 acre horizontal wellbore spacing unit for this well from 320 acres to 400 acres by including Township 6 North, Range 66 West, 6th P.M.: Section 32:   S½SE¼ Weld County, Colorado.

65.     Upon information and belief, either Synergy or Petroleum Management, LLC, an entity controlled by Holloway and Rasmuson and others, is the lessee of oil and gas and other hydrocarbons in Township 6 North, Range 66 West, 6th P.M.: Section 32: S½SE¼ Weld County, Colorado.

66.     Upon information and belief, either Synergy or Petroleum Management, LLC will therefore receive a proportionate share of the hydrocarbons produced from the Wiedeman 21-5-3CHZ Well, on an acreage basis, thereby reducing the share of production which otherwise would have been received by Briller.

67.     On or about September 3, 2014, Synergy commenced the drilling of all of the horizontal wells except for the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well.

68.     Neither Synergy nor Holloway nor Rasmuson notified RWL Enterprises or Briller that the drilling of the horizontal wells had commenced.

69.     On or about September 23, 2014, Synergy and Rasmuson e-mailed RWL Enterprises a copy of the August 8, 2014 Dufford & Brown opinion letter, purportedly advising Synergy that the GTC Lease had expired in 2013, or earlier.

70.     On or about October 14, 2014, Synergy filed with the Colorado Oil and Gas Conservation Commission an Application for Permits to Drill the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well.

71.     Through November, 2014, Synergy, and Holloway and Rasmuson continued to periodically discuss with Briller the possibility of acquiring the GTC Well and the GTC Lease from Briller.

72.     On or about November 6, 2014, IPT, as agent for Synergy, and/or Holloway and/or Rasmuson, sent a letter to the Colorado Oil and Gas Conservation Commission requesting the Director of the Commission to create a 400 acre wellbore spacing unit pursuant to COGCC Rule 318A.e., for the drilling of the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well, into the Subject Lands, and for the purposes of producing hydrocarbons from the Subject Lands ("400 IPT Letter"), which stated in pertinent part:

"Synergy is not the only owner within the proposed wellbore spacing unit and has provided notice to the remaining owner(s) within this spacing unit, as required by COGCC Rule 318A.e(6). Copies of the required notification letters are on file at Synergy's office. The required thirty (30) day notice period has elapsed absent the receipt by Synergy of any objection to their

proposal by the owner(s) within the proposed spacing unit for the subject well."

73.     The required notification letters referenced in the 400 IPT Letter were not sent to RWL Enterprises or Briller.

74.     Upon information and belief, the required notification letters referenced in the 400 IPT Letter were not sent to the current lessor, mineral owner, or mineral owners of the Subject Lands.

75.     On or about November 10, 2014, Synergy submitted yet another "OFFSET WELL EVALUATION" to the Colorado Oil and Gas Conservation Commission in support of the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well APD.  Three months after alleging for the first time that the GTC Lease terminated, Synergy's OFFSET WELL EVALUATION again identified the GTC Well as a producing well and identified the operator of the GTC Well as "RWL Enterprises".

76.     On or about November 10, 2014, the Colorado Oil and Gas Conservation approved the Applications for Permit to Drill the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well.

77.     On or about November 11, 2014, Briller learned for the first time that at least four of the eight horizontal wells planned by Synergy had already been drilled into and through the Subject Lands.

78.     On or about November 13, 2014, Synergy commenced the drilling of the 05-123-40560 SRC Wiedeman 21-5-3CHZ Well, the eighth of eight horizontal wells into and through the Subject Lands.

79.     Synergy is the operator of the 320 acre wellbore spacing units and exercises the right to control the conduct of oil and gas operations, including, but not limited to, the drilling, completion, and production from the horizontal wells drilled into the Subject Lands.

80.     Synergy is the operator of the 640 acre wellbore spacing unit and exercises the right to control the conduct of oil and gas operations, including, but not limited to, the drilling, completion, and production from the horizontal wells drilled into the Subject Lands.

81.     Synergy is the operator of the 400 acre wellbore spacing units and exercises the right to control the conduct of oil and gas operations, including, but not limited to, the drilling, completion, and production from the horizontal wells drilled into the Subject Lands.

82.     Upon information and belief, Synergy, Holloway, and Rasmuson obtained valuable geophysical data from the Subject Lands which is the sole property of Briller.

83.     Upon information and belief, Synergy, Holloway, and Rasmuson removed hydrocarbon bearing rock from the Subject Lands which is the sole property of Briller.

84.     Upon  information and belief, Synergy, Holloway, and Rasmuson produced hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well which is the sole property of Briller.

85.     On or about December 9, 2014, Synergy and Rasmuson e-mailed to RWL Enterprises an *undated* letter from Synergy, stating in pertinent part:

(a)     The GTC Well has been identified by Synergy as an offset well within a remediation area distance from a horizontal well now being drilled by Defendant Synergy;

(b)     Synergy's plans to drill the SRC Weideman 21-5-3NBHZ Well ("Weideman Well") within 1500' of the GTC Well; and

(c)     Synergy's demand that RWL Enterprises, as operator of the GTC Well, perform certain operations on the GTC Well "by January 15, 2015," in lieu of which, Defendant Synergy asserted the right to "undertake the mitigation required . . . with expenses to be allocated between operators as contained in the policy and COGCC Rules."

86.     Upon information and belief, Synergy was purporting to rely upon the Colorado Oil and Gas Conservation Commission's DJ Basin Horizontal Offset Policy dated June 20, 2013, revised December 17, 2013 (the "Policy").

87.     The Policy requires 90 days notice prior to the anticipated commencement of hydraulic stimulation.

88.     The Policy does not shift to Briller the cost and risk associated with Synergy's planned remediation operations on the GTC Well.

89.     Colorado Oil and Gas Conservation Commission rules, 2 CCR 404-1, *et seq.*, do not shift to Briller the cost and risk associated with Synergy's planned remediation operations on the GTC Well.

90.     The Colorado Oil and Gas Conservation Act, C.R.S. § 34-60-101 *et seq.* does not shift to Briller the cost and risk associated with Synergy's planned remediation operations on the GTC Well.

91.     By letter dated December 19, 2014, Briller demanded that Defendant Synergy cease and desist from taking any additional action which would result in additional trespasses upon the GTC Lease and conversion of hydrocarbons located within the boundaries of the GTC Lease, and further demanded that Synergy return the value of all produced hydrocarbons from the Subject Lands to Briller.

92.     Briller has performed or complied fully with all contractual and other rights and obligations and/or conditions precedent to the maintenance of this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(TRESPASS, ALL PARTIES)

93.     Briller incorporates by reference, as if fully restated herein, all allegations of Paragraph Nos. 1 through 92 and all numbered and unnumbered subparts thereof, to

the extent such allegations support and are consistent with the claims made and relief sought herein.

94.    Synergy, Holloway, and/or Rasmuson intended to cause the drilling of the horizontal wells and the deviated SRC #31-5D Well into and through the Subject Lands.

95.    Synergy, Holloway, and/or Rasmuson caused the horizontal wells and the deviated SRC #31-5D Well to be drilled into and through the Subject Lands.

96.    Briller did not consent to the drilling of the horizontal wells or the deviated SRC #31-5D Well into or through the Subject Lands.

97.    Synergy, Holloway, and/or Rasmuson's drilling of the horizontal wells has caused physical damage to Briller's mineral interests, and economic damages, in an amount to be proved at trial, measured by the value of any geophysical data, and the value of all hydrocarbons produced and to be produced from the Subject Lands; which is approximately $42 million dollars.

98.    Briller respectfully requests that this Court award Briller joint and several economic damages measured by the value of any geophysical data, and the value of all hydrocarbons produced to date, in an amount to be proven at trial, plus pre- and post-judgment interest; and further that the Court issue an order, judgment, and decree requiring Synergy, Holloway, and/or Rasmuson to allocate future production from the wells to Briller, proportionately reduced to Briller's share of each wellbore spacing unit

based on an acreage basis, and such other relief in law or equity to which Briller is entitled.

SECOND CLAIM FOR RELIEF<br>(BAD FAITH TRESPASS, ALL PARTIES)

99. Briller incorporates by reference, as if fully restated herein, all allegations of Paragraph Nos. 1 through 98 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

100. Based upon all of the allegations herein, Synergy, Holloway, and/or Rasmuson acted in bad faith as demonstrated by their course of conduct since 2008, including, but not limited to:

(a) With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally agreed with the City of Greeley to:

"[C]ause the RWL oil/gas well and associated equipment located on the Boomerang Golf Course to be Plugged and Abandoned and all equipment associated with this site to be reclaimed to the original surface conditions prior to the drilling of the wells shown on the attached well plats;"

without Briller's knowledge and without obtaining Briller's consent;

(b)     With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally misrepresented to the Colorado Oil and Gas Conservation Commission that notice of the wellbore spacing unit applications was provided to all owner(s) within the proposed wellbore spacing units, as required by COGCC Rule 318A.e.(6);

(c)     With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally failed to provide notice of Counterclaim Defendants' 320 acre wellbore spacing unit applications to Briller, or the lessor, mineral owner, or mineral owners of the Subject Lands as required by COGCC Rule 318A.e.(6);

(d)     With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally failed to provide notice of Counterclaim Defendants' 640 acre wellbore spacing unit applications to Briller, or the lessor, mineral owner, or mineral owners of the Subject Lands as required by COGCC Rule 318A.e.(6);

(e)     With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally failed to provide notice of Counterclaim Defendants' 400 acre wellbore spacing unit application to Briller, or the lessor, mineral owner, or mineral owners of the Subject Lands as required by COGCC Rule 318A.e.(6); and

(f)    With knowledge that Briller was the lessee of the GTC Lease, Synergy, Holloway, and/or Rasmuson willfully and intentionally caused the drilling of the horizontal wells and the deviated SRC #31-5D Well into and through the Subject Lands knowing that Briller did not consent to the drilling of those wells into and through the Subject Lands.

101.    Synergy, Holloway, and/or Rasmuson's drilling of the horizontal wells and the deviated SRC #31-5D Well has caused physical damage to Briller's mineral interests, and economic damages, in an amount to be proved at trial, measured by the value of any geophysical data, and the value of all hydrocarbons produced and to be produced from the Subject Lands; which is approximately $42 million dollars, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well.

102.    Briller is further entitled to an order, judgment, and decree requiring Synergy, Holloway, and/or Rasmuson to allocate future production from the wells to Briller, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well, proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis.

103.    Briller respectfully requests that this Court award Briller economic damages, jointly and severally, measured by the value of any geophysical data, and the

value of all hydrocarbons produced to date, in an amount to be proven at trial, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well, plus pre- and post-judgment interest; and further that the Court issue an order, judgment, and decree requiring Synergy, Holloway, and/or Rasmuson to allocate future production from the wells to Briller, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well, proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis, and such other relief in law or equity to which Briller is entitled.

THIRD CLAIM FOR RELIEF
(CONVERSION OF HYDROCARBONS)

104.   Briller incorporates by reference, as if fully restated herein, all allegations of Paragraph Nos. 1 through 103 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

105.   Synergy, Holloway, and/or Rasmuson have exercised distinct and unauthorized acts of dominion or ownership over hydrocarbons produced from the Subject Lands.

106.   By letter dated December 19, 2014, Briller demanded that Synergy cease and desist from taking any additional action which would result in the conversion of

hydrocarbons from the Subject Lands, and further demanded that Synergy return the value of all produced hydrocarbons from the Subject Lands to Briller.

107.   Synergy, Holloway, and/or Rasmuson refused to return the value of all produced hydrocarbons from the Subject Lands to Briller.

108.   Briller respectfully requests that this Court award Briller economic damages, jointly and severally, measured by the value of all hydrocarbons produced and to be produced, in an amount to be proven at trial, plus pre- and post-judgment interest, and such other relief in law or equity to which Briller is entitled.

<u>FOURTH CLAIM FOR RELIEF</u>
(CIVIL THEFT, C.R.S. § 18-4-405, ALL PARTIES)

109.   Briller incorporates by reference, as if fully restated herein, all allegations of Paragraph Nos. 1 through 108 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

110.   Synergy, Holloway, and/or Rasmuson have knowingly obtained control over hydrocarbons produced from the Subject Lands without authorization.

111.   Synergy, Holloway, and/or Rasmuson did so with the specific intent to permanently deprive Briller of the benefit of the hydrocarbons.

112.   Briller may recover two hundred dollars or three times the amount of the actual damages sustained by each of them, whichever is greater, and may also recover costs of the action and reasonable attorney fees.

113.    Briller respectfully requests that this Court award Briller damages, jointly and severally, in the amount of two hundred dollars or three times the amount of the actual damages sustained by Briller, whichever is greater, plus pre- and post-judgment interest, including the costs of the action and reasonable attorney fees, and such other relief in law or equity to which Briller is entitled.

FIFTH CLAIM FOR RELIEF<br>(PERMANENT INJUNCTION)

114.    Briller incorporates by reference, as if fully restated herein, all allegations of Paragraph Nos. 1 through 113 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

115.    Briller requests a permanent injunction against Synergy, Holloway, and/or Rasmuson precluding them from disclosing or using for their benefit any geophysical data acquired from the Subject Lands, and such other relief in law or equity to which Briller is entitled.

116.    Briller requests a permanent injunction against Synergy, Holloway, and/or Rasmuson requiring Synergy, Holloway, and/or Rasmuson to allocate future production from the wells to Briller, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells  and the deviated SRC #31-5D Well, proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis, and such other relief in law or equity to which Briller is entitled.

117.   Briller respectfully requests that this Court issue a permanent injunction against Synergy, Holloway, and/or Rasmuson requiring Synergy, Holloway, and/or Rasmuson to allocate future production from the wells to Briller, without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the horizontal wells and the deviated SRC #31-5D Well, proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis; and further precluding Synergy, Holloway, and/or Rasmuson from disclosing or using for their benefit any geophysical data acquired from the Subject Lands and such other relief in law or equity to which Briller is entitled.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Briller, prays for a judgment and/or a decree from this Court providing for the following:

A.   Joint and several economic damages measured by the value of any geophysical data and the value of all hydrocarbons produced and to be produced from the wells, in an amount to be proven at trial; proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis;

B.   That said damages be awarded without deduction for the costs to drill, complete, operate, and produce hydrocarbons from the wells;

C.   That Synergy, Holloway, and/or Rasmuson be required to allocate future production from the wells to Briller, without deduction for the costs to drill, complete,

operate, and produce hydrocarbons from the wells, proportionately reduced to Briller's share of each wellbore spacing unit based on an acreage basis;

D.      That Synergy, Holloway, and/or Rasmuson are precluded from disclosing or using for their benefit any geophysical data acquired from the Subject Lands;

E.      Joint and several damages in the amount of two hundred dollars or three times the amount of the hydrocarbons produced from the wells, whichever is greater, including the costs of the action and reasonable attorney fees, and such other relief in law or equity to which Briller is entitled;

F.      Pre- and post-judgment interest pursuant to C.R.S. § 13-21-101 and/or § 5-12-102;

G.      Attorneys' fees and Costs incurred by Briller in connection with this action;

H.      Such other relief in law or equity to which Briller is entitled.

## <u>DEMAND FOR JURY TRIAL</u>

Defendants demand trial by jury in this action of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted this 4th day of August, 2015.

POULSON, ODELL & PETERSON, LLC

By: _____
Scott M. Campbell, Esq., Atty. Reg. #24496
Aaron G. Norris, Atty. Reg. #41597
Poulson, Odell & Peterson, LLC
1775 Sherman Street, Suite 1400
Denver, Colorado  80203
Phone:        (303) 861-4400
Facsimile:   (303) 861-1225
E-mail:       scampbell@popllc.com
                   anorris@popllc.com

Attorneys for Defendants/Counterclaimants

     This document was filed via CM/ECF pursuant to D.C.COLO.LCivR 5.1(a). A duly signed original of this document is on file at the law firm of Poulson, Odell & Peterson, LLC pursuant to CM/ECF Rule 4.3.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of August, 2015, I delivered via the CM/ECF system one electronic copy of the above and foregoing ANSWER TO AMENDED VERIFIED COMPLAINT, AND AMENDED COUNTERCLAIMS, AND JURY DEMAND, addressed to the following:

Fritz W. Ganz, Reg. No. 31912
Ronald W. Opsahl, Reg. No. 35662
Randall J. Feurstein, Reg. No. 10479
DUFFORD & BROWN, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
Phone:        (303) 861-8013
Facsimile:    (303) 832-3804
E-Mail:       fganz@duffordbrown.com
E-Mail:       ropsahl@duffordbrown.com
E-Mail:       rfeuerstein@duffordbrown.com


DATED:        August 4, 2015.


Jennifer L. Pettit