IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01337-RBJ

SYNERGY RESOURCES CORPORATION, a Colorado corporation,

      Plaintiff/Counterclaim Defendant,

and

EDWARD HOLLOWAY, an individual, and
CRAIG D. RASMUSON, an individual,

      Counterclaim Defendants,

v.

BRILLER, INC., Nebraska corporation,
R.W.L. ENTERPRISES, and
ROBERT W. LOVELESS,

      Defendants/Counterclaim Plaintiffs,

---

## ORDER on CROSS MOTION FOR SUMMARY JUDGMENT

---

Defendant's cross-motion for what amounts to partial summary judgment, ECF No. 63, is granted for the reasons discussed in this order.

## BACKGROUND

The Court set forth the background facts and history in its order of March 10, 2016 concerning two motions to dismiss, ECF No. 74, and will repeat only so much of the story as is necessary to resolve the pending motion.

Defendant Briller, Inc. is the lessee of two oil and gas leases on land in Weld County, Colorado, referred to as the 1982 and 1985 leases.  The 1982 lease had a primary term of three years.  It provided, however, that it would continue beyond the primary term as long as oil or gas continued to be produced but would terminate if production ceased unless lessee resumed operations for re-working or drilling a well within sixty (60) days from such cessation."  ECF No. 27-1 at ¶¶2, 12.  The 1985 lease had a primary term of 10 years.  Like the 1982 lease it provided that the lease would continue beyond the primary term as long as oil or gas continued to be produced but would terminate if production ceased unless the lessee commenced additional drilling or re-working operations within 90 days.  ECF No. 27-2 at ¶1.

Based on its review of Briller's records in the public file at the Colorado Oil & Gas Commission the plaintiff, Synergy Resources Corporation, became convinced that both leases appeared to have terminated under their respective cessation of production clauses.  It notified Briller of its position, attempted unsuccessfully to obtain confirming records from Briller, and apparently made some unsuccessful attempts to negotiate a deal with Briller.  Ultimately, Synergy obtained leases from the individuals and entities that it believed were the owners of the relevant mineral rights and proceeded with exploration and development activities, including the drilling of eight horizontal wells that crossed through the lands that had been subject to the Briller leases.

Briller was not pleased.  It asserts that its leases had not expired, and that Synergy was trespassing on its leaseholds.  In this suit, removed from the Weld County District Court, Synergy seeks a declaratory judgment as to whether the 1982 and 1985 Briller leases expired by their terms (and a second claim seeking damages caused by defendants' alleged interference with

Synergy's contracts with the mineral owners from whom Synergy obtained leases).  Verified

Complaint, ECF No. 11.  Defendants counterclaimed for a declaration that the leases had not

expired, and defendant Briller added counterclaims against Synergy and two of its principals,

Edward Holloway and Craig D. Rasmuson, for damages and injunctive relief based on theories

of trespass, bad faith trespass and conversion.  ECF No. 10.  Later, after Synergy filed an

Amended Complaint, Briller expanded its counterclaims to add a claim for civil theft.  ECF No.

37 at 66.

       During the initial scheduling conference on October 30, 2015 the parties agreed that the

first step would be to resolve whether the two Briller leases had expired due to cessation of

production.  Briller was about to produce its production records, but Synergy was skeptical about

the bona fides of those records.  The parties agreed, however, that the answer could probably be

found in the records of a third party, DCP Midstream, which purchased the production from the

Greeley Tech Center #41-5 Well.  The records were later obtained, but the dispute was not

resolved.

       Defendants filed a motion in which they argued that Synergy is not a real party in

interest, and that more than 40 mineral owners from whom Synergy obtained leases must be

joined as additional parties to this case.  ECF No. 36.  The Court denied it.  ECF No. 74.

Counterclaim defendants Holloway and Rasmussen filed a motion to dismiss the claims against

them personally.  ECF No. 47.  The Court granted it.  ECF No. 74.  That left pending defendants'

motion for summary judgment, ECF No. 63, which has been fully briefed.  Both parties have

made the briefing more complicated than it needed to be.  The simple question posed, and that

the Court now answers, is whether either or both Briller leases expired.

## ANALYSIS

**A.  <u>The 1982 Lease</u>.**

Reversing its initial position, defendants now contend that the 1982 lease did expire by its terms.  ECF No. 63 at 10.  Synergy agrees.  ECF No. 68 at 8.  I need not discuss it further.

**B.  <u>The 1985 Lease</u>.**

The original 10-year term has long since expired.  However, it is undisputed that production continued thereafter.  It is also undisputed that production ceased from April 22, 2004 to July 20, 2004, a period of 90 days.  Defendants argue that the period of cessation totaled "no more than 90 days."  ECF No. 63 at 8.  That argument goes nowhere, because for resumption of production to rescue the lease from the cessation clause, production must resume "within 90 days."  ECF No. 27-2 at ¶1.  It did not.  In fact, Briller's own evidence suggests that the well was re-started on July 22, 2004.  ECF No. 63-18, discussed below.

However, the cessation clause provides, "this lease shall not terminate if Lessee commences additional drilling *or re-working operations* within ninety (90) days from the date of cessation of production or from the date of completion of any dry hole."  ECF No. 27-2 at ¶1. (emphasis added).  Defendants argue that the lessee did commence reworking operations within the 90-day period and support this argument with the following:

- An affidavit of defendant Robert W. Loveless, the President of Briller, Inc. and the owner of R.W.L. Enterprises, Inc.  ECF No. 62-23.  He states, "The reason the GTC Well ceased producing from April 22, 2004 to July 20, 2004 was because there was a leak in the separator and the gas purchaser requested that the separator be turned off.  A

4

separator is a tank in which gas in solution is separated from the oil as the combined hydrocarbons are produced from the well.  The separator needed to be replaced." *Id* at ¶37.

- Mr. Loveless states, "I hired Triple L Sales & Service to repair or replace the separator in order to restore the GTC well to production.  Triple L Sales & Service sold oilfield equipment and serviced said equipment in the regular course of its business.  I had a continuing business relationship with Triple L Sales & Service for over 20 years, so I am familiar with its business practices." *Id.* at ¶38.

- Mr. Loveless further states that James Pettyjohn was the sole owner and operator of Triple L Sales & Service, but he is deceased, and Triple L no longer exists as a going concern. *Id.* at ¶39.

- Defendants provide an invoice from Triple L Sales & Service of Fort Morgan, Colorado to RWL Enterprises dated July 31, 2004.  ECF No. 63-18.  The invoice states that on July 15, 2004 Triple L's personnel "went to lease, disconnected old seperator [sic] crane to remove old seperator (sic.) property & set new." *Id.*  The invoice further shows that on July 20, 2004 Triple L returned to the site to "set seperator" [sic]; returned again on July 21, 2004 when they "piped up seperator [sic]; and finally on July 22, 2004 Triple L "started well." *Id.*

- Although the invoice does not specifically identify the location or well number of the well, Mr. Loveless represents that it reflects the work done to restore the GTC Well to production, and that he has kept the original invoice in his possession among the business records of RWL Enterprises since that time. *Id.* at ¶¶40-42.

In their motion defendants argue, "'Reworking' is any physical operation associated or connected with the physical site of the well or unit intended to resolve whatever physical difficulty resulted in the well ceasing production."  ECF No. 63 at 12 (citing *Sheffield v. Exxon Corp.,* 424 So. 2d 1297, 1303 (Ala. 1982)).  Defendants also cite *Pro-Chem, Inc. v. Lasseter Petroleum, Inc.,* 837 P.2d 823 (Kan. App. 1990), which held that work done to reroute a saltwater disposal line that was done to restore oil production constituted reworking.  *Id.* at 826.

Synergy responds that defendants' response to Synergy's motion for partial summary judgment, filed January 28, 2016, was Briller's first indication that it began reworking operations on July 15, 2004.  ECF No. 68 at 8.  Synergy then states,

> Synergy has not had the opportunity to investigate this newly revealed information and has not had the opportunity to depose any party surrounding this "reworking" operation.  As a result, significant questions of fact exist regarding whether the "reworking" operation satisfies the 1985 Briller Lease's cessation of production clause.

> Further, there remain mixed questions of fact and law regarding whether the purported replacement of a separator qualifies as "reworking" under an oil and gas lease sufficient to save the lease from termination.  Briller cites no Colorado case on point holding that replacement of a separator qualifies as "reworking" operations, and Synergy is unaware of any such case law.  Accordingly, Briller has not satisfied the standard for summary judgment, and its Motion, therefore, should be denied.

Defendants argue that Synergy's response is insufficient to preclude summary judgment. I agree.  Defendants produced both an affidavit and a document that appear to establish that Briller commenced re-working operations within the 90-day cessation period.  At that point Synergy was obliged either (1) to produce some evidence, such as through depositions, affidavits or documents, indicating that the facts are genuinely disputed, Fed. R. Civ. P. 56(c); or (2) by affidavit or declaration show why it cannot present facts essential to justify its opposition, Rule

56(d); or (3) show why the facts, even if true, do not support summary judgment as a matter of law, Rule 56(a).  Synergy has done none of those things.

Synergy has, at least by now, had a reasonable opportunity to engage in investigation and discovery.  Synergy filed this case on June 23, 2015.  Both parties realized from the outset that the first question to be decided was whether the leases had expired.  During the initial scheduling conference on October 30, 2015 counsel and the Court discussed an initial period of 45 days without depositions followed by a limited number of depositions of the mineral interest owners from whom Synergy had obtained leases, and an initial document discovery focus on obtaining records from DCP Midstream.  ECF No. 78 at 38-40.  But that initial period has long since concluded.

On January 7, 2016 Synergy filed a motion for partial summary judgment, claiming that "there are no genuine issues as to any material fact regarding the expiration of the leasehold interest claimed by Defendants."  ECF No. 56 at 1.  During a telephone hearing concerning discovery disputes approximately two weeks later the Court ordered that no further deposition would be taken at that time.  ECF No. 60.  On January 28, 2016 defendants filed their response in which they advanced the re-working argument and attached the Loveless affidavit and Triple L invoice in support.  ECF No. 61 at 13-15 and Exhibits O and S (ECF Nos. 61-18 and 61-23).  This was repeated in defendants' pending cross-motion for summary judgment filed on February 5, 2016.  ECF No. 63.

On February 9, 2016 Synergy withdrew its motion for partial summary judgment, indicating that it had discovered that there were material issues precluding summary judgment (on the lease expiration issue).  On February 29, 2016 Synergy filed its response to the pending

motion in which it asserted that it had not had an opportunity to investigate or take depositions concerning the reworking issue.  ECF No. 68.  On the following day, March 1, 2016, the Court lifted the stay on depositions and extended the discovery cutoff to May 27, 2016.  ECF No. 69.

More than three months have now passed since Synergy claims to have learned of the reworking issue.  More than two months have passed since the stay on depositions was lifted. But there is still no indication that Synergy has developed any facts, by further investigation or by deposition, that would establish a genuine issue of material fact concerning the reworking issue.

But perhaps most importantly, Synergy has not has not shown by affidavit or declaration the reason it has not been able to present facts essential to justify its opposition, nor has it suggested any plausible avenue that it needs to explore in order to show that the is a genuine and material dispute of fact.  The Loveless affidavit provides what appears to be a reasonable explanation as to why production ceased production on April 22, 2004, and that the separator needed to be replaced before the well could be started up again.  It does not appear that a deposition of Mr. Loveless would likely produce a different explanation.  The invoice appears to be genuine, and Synergy has not so much hinted at any doubt about that.  The owner of Triple L apparently is deceased, and the business no longer exists as a going concern, so it does not appear that there is a potentially helpful deposition to be taken on that end.  The Court has met with counsel twice since Synergy's response was filed (a discovery dispute hearing on March 8 and a status conference on April 1, 2016), and on neither occasion did Synergy's counsel say anything about the re-working issue or the need for more time to explore it.

Nor has Synergy developed any argument as to why the facts do not support summary judgment on the lease termination issue as a matter of law.  In its response Synergy commented that defendants have not cited Colorado case law indicating that replacing a separator counts as re-working.  However, Synergy has not taken issue with the cases that defendants cited on the more general subject of what constitutes re-working, nor has Synergy cited any contrary authority, nor has it explained why changing a separator should not be viewed as reworking.

In short, Synergy has not made, nor does is appear to this Court that Synergy has any reasonable prospect for developing, a showing that there is a genuine dispute of fact as to whether the work that was done on defendants' behalf by Triple L on July 15, 2004 was sufficient to prevent the expiration of the 1985 lease.  I conclude that defendants are entitled to partial summary judgment as a matter of law on that issue.

## ORDER

Defendants/Counterclaimants Cross-Motion for Summary Judgment, ECF No. 63, is deemed to be a motion for partial summary judgment on the issue of whether the 1982 and 1985 leases have terminated due to cessation of production.  The motion is granted to the extent that the Court declares that the 1982 lease has terminated, but the 1985 lease has not terminated.

DATED this 5th day of May, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge